Shaun Setareh (SBN 204514)
Thomas Segal (SBN 222791)
Farrah Grant (SBN 293898)
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone:    (310) 888-7771
Facsimile:    (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com
Attorneys for Plaintiff Michael Henry and the Class

Melissa Grant (SBN 205633)
Melissa.Grant@capstonelawyers.com
Robert Drexler (SBN 119119)
Robert.Drexler@capstonelawyers.com
Molly DeSario (SBN 230763)
Molly.DeSario@capstonelawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs Sandy Bell, Martin Gama and the Class

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY BELL and MARTIN GAMA, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiffs,<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation; JOHN BROOKS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:12-cv-02499-DJC-CKD<br>[Assigned to Hon. Daniel J. Calabretta]<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017 ORDER GRANTING PARTIAL SUMMARY JUDGMENT (Dkt. NO. 158) DUE TO DEFENDANT'S FALSE TESTIMONY**<br><br>Date: March 28, 2024<br>Time: 1:30 p.m.<br>Courtroom: 10<br><br>Trial: January 27, 2025 |

1

PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017
ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY


Case 2:12-cv-02499-DJC-CKD   Document 216   Filed 02/20/24   Page 2 of 16

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................................................... 4

II. ARGUMENT .................................................................................................................. 7

    A. Home Depot's Failure to Engage in the Discovery Process in Good Faith Prevented Plaintiffs From Obtaining Relevant Discovery ....................................... 7

        1. Home Depot Did Not Investigate Before Making False Statements to the Court Regarding Home Depot's Workday Definition ................................................. 7

        2. Home Depot failed to produce key documents regarding the workday definition until 6 years after making false representations to the Court ........................... 8

        3. Home Depot Improperly Asserted the Attorney-Client Privilege to Keep the Truth From Plaintiffs ................................................................................................ 10

    B. Whether Home Depot Has a Good Faith Defense to the 203 and 226 Claims Is At Minimum a Triable Issue of Fact ............................................................................ 13

        1. Home Depot Knew that It Was Avoiding Paying Daily Overtime by Using a Midnight-to-Midnight Workday Definition ...................................................... 14

III. CONCLUSION ............................................................................................................. 15


2
PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017
ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY


# TABLE OF AUTHORITIES

**Federal Cases**

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir.1992) ......................................... 11

*Garcia v. County of Stanislaus*, No. 121-CV-00331JLTSAB, 2022 WL 4237960
  (E.D. Cal., Sept. 13, 2022) ................................................................................................ 12

*Henry v. Home Depot U.S.A., Inc.*, No. 14-CV-04858-JST, 2016 WL 39719
  (N.D. Cal. Jan. 4, 2016) ............................................................................................. 15, 16

*In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F.Supp.2d 609 (N.D.Cal.2007) ........ 14

*Jakosalem v. Air Serv Corp.*, No. 13-CV-05944-SI, 2014 WL 7146672
  (N.D. Cal. Dec. 15, 2014) ............................................................................................. 5, 14

*Lemus v. Denny's Inc.*, No. 10CV2061-CAB (WVG), 2015 WL 13740136
  (S.D. Cal. July 31, 2015) ................................................................................................ 15

*McCoy v. Stronach*, 494 F.Supp.3d 736 (E.D. Cal. 2020) .................................................. 7

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 1992) ......................................... 7, 14

*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337 (9th Cir. 1996) ....................................... 11

*U.S. v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) .................................................................... 12

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370 (2d Cir. 2001) ............................... 5

*Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) .......................................................................... 11

**California Cases**

*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833 (2015) .......................... 15

*Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319 (2004) ................................. 14

*Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361 (2011) ....................................... 15

3

**PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017
ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY**

## I. INTRODUCTION

The ruling granting Defendant's partial summary judgment on Plaintiffs' derivative certified Labor Code section 203 claims and their 226 claims must be vacated, as the key basis for that ruling was recanted as false testimony. In support of its partial summary judgment motion, Home Depot argued that it had a good faith defense to the Labor Code 203 and 226 claims because it created their workday definition before opening stores in California, that it always defined its workday as midnight-to-midnight, and that it never analyzed the impact of its workday definition on overtime paid or saved. In granting Defendant's motion, this Court concluded that, even though Home Depot had no direct evidence of a *bona fide business reason* for defining its workday in California as midnight-to-midnight as the law requires, the circumstantial evidence **that Home Depot now admits is false and is based solely on its 30(b)(6) designee's mere surmise** was sufficient to create—as a matter of law—a good faith dispute defense as to whether Home Depot acted willfully, knowingly, and intentionally. (Dkt. No. 158.) But Home Depot's 30(b)(6) designee, Christine Barnaby, has recanted this critical testimony and admitted that Home Depot changed its California workday twice in the 1990s.  That fact, especially when viewed in historical context, not only requires reconsideration of the Court's summary judgment ruling, it requires its reversal. Indeed, that fact and those that flow from it are "of such importance that it would have changed the outcome" of the prior ruling. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).

To begin with, according to California's Department of Labor Standards Enforcement ("DLSE"), "'workday' is defined in the Industrial Welfare Commission ("IWC") Orders and Labor Code § 500 for the purpose of determining when daily overtime is due." https://www.dir.ca.gov/dlse/Glossary.asp?Button1=W (visited 2/18/2024). It is therefore not credible for Home Depot to claim that it defined its California workday without any consideration of its impact on its obligation to pay daily overtime.  In fact, around 1992, Home Depot changed its workday definition in California—and California only—from its generic, company-wide workday of midnight to 11:59 p.m. to 4:00 a.m. to 3:59 a.m.,

4

**PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017 ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY**

presumably to ensure daily overtime was paid to those employees who worked more than eight hours that crossed midnight.[1] In 1997, the IWC eliminated California's daily overtime requirement—a fact that logically explains Home Depot's decision to change its unique California workday definition back to the generic calendar day.

But when California reenacted its daily overtime laws (effective January 1, 2000), Home Depot did not reinstate its 4:00 a.m. to 3:59 a.m. workday or adopt any other workday definition that would not have deprived employees of overtime pay when they worked more than eight hours that span midnight. Instead, presumably due to its concurrent store expansion in California and desire to reduce overtime payments, Home Depot continued defining its workday as midnight to 11:59 a.m., thereby evading its obligation to pay overtime wages. Thus, the Court's prior finding that Home Depot chose a midnight to 11:59 p.m. workday definition in the 1980's before it was subject to California's daily overtime laws no longer vindicates its use of that workday since January 1, 2000.

Once again, Home Depot presents no evidence supporting a *bona fide business reason* for staying with its midnight-to-midnight workday definition from January 1, 2000 onward. To the contrary, Home Depot claims it never analyzed the overtime implications of the 4:00 a.m. and midnight workday definitions. But this claim is contradicted by the testimony of its other 30(b)(6) designee, Barbara Pennington, who admitted that "Home Depot does track overtime costs" and has a "general directive" that employees should work their scheduled eight-hour shift to hold down overtime costs. (Grant Decl., Ex. 6, Deposition of 30(b)(6) designee Barbara Pennington (June 30, 2017) at 32:11-33:9.) It is therefore reasonable for the trier-of-fact to conclude that Home Depot knew that maintaining a midnight to 11:59 p.m. workday was saving it from paying daily overtime that it paid when it had a 4:00 a.m. workday and that's why it kept the midnight-to-midnight workday when California reinstated its daily overtime laws as of January 1, 2000. In fact, at that exact time,

---

[1] To earn overtime wages, "an employee's workday need not coincide with the beginning of that employee's shift," but must work more than eight hours that crossed midnight. *Jakosalem v. Air Serv Corp.*, No. 13-CV-05944-SI, 2014 WL 7146672, at *2 (N.D. Cal. Dec. 15, 2014) (citing California Division of Labor Standards Enforcement Policies and Interpretations Manual ("DLSE Manual") § 48.1.2.).

Home Depot began a "strategic performance initiative" known as SPI 2000, which involved more employees working shifts that crossed midnight. (*Id.* at 25:20-28:19.) SPI 2000's purpose was to use "all of the equipment that's used to pack out merchandise, to have that operational when customers were not in the store." (*Id.* at 28:21-29:2.) Indeed, Plaintiffs' expert analysis of Home Depot's time records shows that 37,891 employees worked shifts that crossed midnight. Thus, Barnaby's averments that Home Depot established its midnight-to-midnight workday before operating in California and "that Home Depot had never, prior to this litigation, analyzed the impact that its workday definition has on the overtime the company saved or paid," on which the Court previously relied, are simply not credible. (Dkt. 158-6:8-14.)

Plaintiffs are not contending, as Home Depot would have this Court believe, that only by defining its workday as 4:00 a.m. to 3:59 a.m. when California reinstated daily overtime on January 1, 2000 could this Court find Home Depot willfully sought to evade paying overtime. The point is that Home Depot knew it had to pay overtime to employees who worked more than eight hours in a workday. It also knew that it did not have to pay overtime to employees who worked more than eight hours if those eight hours crossed midnight when its workday was midnight to 11:59 p.m. Nevertheless, Home Depot kept that workday definition when California reinstated its daily overtime laws. It is thus hard not to conclude that Home Depot did so to evade California's daily overtime laws.

Plaintiffs submit that they have set forth facts "of a strongly convincing nature to induce the court to reverse its prior" decision. *McCoy v. Stronach*, 494 F.Supp.3d 736, 739 (E.D. Cal. 2020). Indeed, the Court's prior ruling was based on Ms. Barnaby's false representation that Home Depot never changed its midnight to 11:59 p.m. workday definition in California, on the dubious representation that Home Depot never analyzed the impact its workday definitions had on the overtime wages it paid or saved, and on the no longer applicable representation that Home Depot chose a midnight to 11:59 p.m. workday before it knew it had to pay daily overtime wages. And under the summary judgment standard, all inferences are to be drawn in favor of the party opposing the motion for

summary judgment, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 1992).

For all the foregoing reasons, whether Home Depot has a good faith defense to Plaintiffs' Labor Code sections 203 and 226 claims is at minimum a triable issue of fact. Accordingly, the Court's 2017 summary judgment Order must be reversed.

## II. ARGUMENT

### A. Home Depot's Failure to Engage in the Discovery Process in Good Faith Prevented Plaintiffs From Obtaining Relevant Discovery

#### 1. Home Depot Did Not Investigate Before Making False Statements to the Court Regarding Home Depot's Workday Definition

Home Depot's 30(b)(6) deponent, Christine Barnaby, stated in her April 7, 2017 declaration:

> 1. As Director of Human Resources Operations... I am familiar with, and have access to, employee work history records, employee timekeeping and payroll records, and Home Depot's current and historical policies and procedures.
> 2. Home Depot opened its first store in California in 1985.
> 3. Home Depot established its workday in the 1980s. The definition applied and continues to apply on a company-wide basis.
> 4. Home Depot has never changed its workday definition.

(Dkt. No. 146.1, ¶¶ 2-5).

However, as made clear in her recent 30(b)(6) deposition, Home Depot did not in good faith look for documents substantiating its claim that the workday did not change before making that false representation to the Court, which shaped the case claims. Barnaby admitted that she made no attempt to investigate whether Home Depot in fact changed its California workday definition before signing her April 7, 2017 declaration. She spoke to no one and reviewed no documents. (Grant Decl. (Dkt. No. 214-1), Ex. 2, December 13, 2023, Barnaby Tr. 47:2-24):

> Q. What basis did you have for stating that Home Depot has never changed its workday definition in this declaration that you signed on April 7, 2017?
> A. Working knowledge of how we were always processing and paying and calculating the day divide, and within the company had always been midnight. I never -- I never recalled it to be anything different other than midnight.
> Q. So it was based on your recall; is that correct?
> A. And -- that's correct.
> Q. Did you speak to anybody at the time to confirm your recall?
> A. No.

7

**PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017 ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY**

> Q. Did you review any documents at the time to confirm your recall?
> A. No, I didn't need to.
> Q. Why didn't you need to?
> A. Because it was always the process that we were processing payroll. It was always midnight. It was always the general working knowledge that we always had it at midnight.

The fact that Defendant failed to do its due diligence before making false representations renders these self-serving statements particularly unsettling. Unfortunately, Defendant's false testimony shaped this case,[2] resulted in a waste of judicial resources, and caused Plaintiffs to incur unnecessary attorneys' fees and litigation and mediation costs.[3]

### 2. Home Depot failed to produce key documents regarding the workday definition until 6 years after making false representations to the Court

Home Depot claims in its Opposition that Barnaby "never lied or misrepresented anything." (Dkt. 215, 19:12-23.)  Not so. Barnaby repeatedly misrepresented that "Home Depot has never changed its workday definition" in California even though she did nothing to determine whether that was a true statement. She spoke to no one and reviewed no documents before signing her April 7, 2017 Declaration. (Grant Decl. (Dkt. No. 214-1), Ex. 2, Dec. 13, 2023 Barnaby Tr., 47:2-24.)  She based it only on personal surmise and "working knowledge." (*Id.* at 46:4-24.)

Home Depot claims that Barnaby undertook a reasonable search. (Opp: 2:3-4 ["The discovery rules do not require finding such needles; they require a reasonable search, which was undertaken in this case."].)  She claimed in her December 13, 2023 deposition that because Home Depot's policies are retained for only ten years, "there would be nothing I could find prior to ten years ago."  (*Id.* at 82:19-22.)  Yet, in her August 14, 2019 declaration and recounted in Home Depot's Opposition, Barnaby claimed that she "review[ed] records from the early 1980s" that showed a midnight to 11:59 p.m. workday like the one used now. (Dkt.173-2 at ¶ 6.b.; Dkt. 215 at 27:6-10). In 2019, she also claimed

---

[2] Home Depot's practice of hiding key information is not unique to this case. In the case of *John Utne v. Home Depot U.S.A., Inc.* ("*Utne*"), California Northern District Case No. 3:16-cv-01854-RS, Home Depot failed to preserve crucial video footage related to the class action wage and hour claims. On May 9, 2022, the *Utne* court found that "Defendant engaged in misleading discovery conduct and failed to produce discoverable materials." (ECF No. 275).
[3] *See* Dkt. No. 214 at 12:11-18 (Plaintiffs moving papers).

that "she tried to find records relating to timekeeping between the 1980s and 2000s but was unable to find any, and that, if they existed, they should have been located in the places that she searched." (Dkt. 173-2 at ¶ 7; Dkt. 215 at 11-13.)

But as it turns out those representations are untrue. Six years after making false representations to the Court, and only after Plaintiffs' counsel specifically reminded Home Depot of its duties to supplement discovery under Rule 26, Home Depot produced standard operating procedure policies (SOPs) from the 1990s.  A July 19, 1992 SOP that Home Depot retained for 31 years revealed that Home Depot had in fact changed its California workday definition to 4:00 a.m. to 3:59 a.m. (*Id.* at 82:23-84:15, Depo Ex. 51.) A 26-year-old Timekeeping and Payroll SOP 01-48 11/07/97 revealed that the California workday was still 4:00 a.m. to 3:59 a.m. (2nd Grant Decl., Ex. 7.) A 25-year-old SOP Update 983 dated March 6, 1998 states "the exception for California overtime pay has been removed," which according to Ms. Barnaby refers to California's repeal of daily overtime. (*Id.* at 110:6-111:15, Ex. 52). And an SOP for Employee Relations, 01-48 rev. Mar 6, 1998, revealed that Home Depot changed its workday definition in California back to midnight to 11:59 p.m. (*Id.* at 111:24-112:23.) The existence of the 1992, 1997, and 1998 SOPs belies Barnaby's claims that she conducted a diligent search for documents but Home Depot's 10-year retention policy precluded her from discovering the truth before she signed her August 28, 2015, April 7, 2017, and April 14, 2019 declarations. And it was the April 7, 2017 Declaration on which this Court relied in granting Home Depot partial summary judgment on the derivative 203 and 226 claims.[4]

Barnaby has made repeated misrepresentations to this Court rendering her credibility suspect at best. Her misrepresentations have prejudiced Plaintiffs throughout this litigation and continue to plague Plaintiffs' ability to prosecute this case.  At minimum, whether Home Depot willfully and knowingly failed to pay overtime wages due upon class

---

[4] The Court denied Defendant's motion for summary judgment on the underlying overnight overtime claim stating that "I can't conclude as a matter of law that this workday designation was not designed to evade overtime since there are dispute issues of material fact, and the evidence before the Court gives rise to competing inferences."  (Dkt. 113 Ex. A at 28:21-24.)

9

PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017 ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY

members separation and failed to provide complete and accurate wage statements as a result are material facts in dispute. Accordingly, the Order granting Defendant summary judgment on Plaintiffs' sections 203 and 226 claims should be vacated and reversed.

### 3. Home Depot Improperly Asserted the Attorney-Client Privilege to Keep the Truth From Plaintiffs

Barnaby testified that she did not know why Home Depot changed its California workday definitions twice in the 1990s. (2nd Grant Decl., Ex. 5, Barnaby Depo 51:21-24.) She also testified that she learned of the changes in Home Depot's California workday from an in-house counsel, who provided her with the SOPs from the 1990s. When asked what the in-house counsel's name is and whether she asked anyone for the SOP policies from the 1990s before signing her 2017 declaration, her counsel instructed her not to answer on the grounds of attorney-client privilege and work product doctrine. (Grant Decl., Ex. 2, Barnaby Depo 35:3-39:7; 47:25-48:6; 70:15-71:3.) How and where Home Depot found those SOPs, and why they could not have been found six years earlier, are questions subject to the same privilege assertion. Plaintiffs, however, contend that by claiming a good faith defense to a finding of willfulness based on Barnaby's false statement that Home Depot never changed its workday definition and the questionable representation that Home Depot never analyzed the impact its workday definitions had on overtime wages, as well as Ms. Barnaby's admission that in-house counsel discovered the truth, Home Depot waived the attorney-client privilege and work product doctrine with respect the subject at issue. *See Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness" with its primary purpose being "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege

10

may be implicitly waived.")  Moreover, "the protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn Co. v. U.S.*, 449 U.S. 383, 395–96 (1981).In addition, Barnaby's conversations with the in-house counsel and the in-house counsel's testimony him or herself are the only sources of this highly relevant and critical information. Plaintiffs therefore intend to file a motion to compel further deposition testimony of Barnaby and testimony of the in-house counsel.

      Home Depot argues that a factfinder may not draw any negative inference from a witness's invocation of the attorney-client privilege. Defendant, however, has not established that the attorney-client privilege was properly invoked here, and as the party asserting the privilege, it bears the burden of establishing each element of the privilege. *Garcia v. County of Stanislaus*, No. 121-CV-00331JLTSAB, 2022 WL 4237960, at *7 (E.D. Cal., Sept. 13, 2022).

> The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures. (Citation) The fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002) (citation omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*.

*U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). Moreover, "[t]he attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed." *Garcia*, 2022 WL 4237960, at *7 (citation omitted). Here, the information communicated by the in-house counsel to Barnaby—namely, that Home Depot changed its California workday definition twice—and the SOPs from the 1990s reflecting that fact that s/he gave her—were clearly intended to be disclosed in this litigation and were so disclosed. By blocking and continuing to block access to facts bearing directly on this critical issue by improperly asserting the attorney-client privilege, Home Depot has abused and continues to abuse the discovery process.

      In response to Plaintiffs' statement that Defendant has not provided any explanation for why it did not discover the fact that it had previously changed its workday definition

11

PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017 ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY

twice, Defendant points to the allegation that Barnaby recently spoke with individuals at Home Depot about the workday definition. (Opp. page 28:10-18.) Barnaby spoke to these individuals to prepare for the December 2023 deposition, she did not speak with them about the workday definition in advance of providing her 2015, 2017, or 2019 declarations with false testimony.  (2nd Grant Decl., Ex. 5, Barnaby Depo 70:15-71:3.) Additionally, that Barnaby spoke to individuals in advance of her recent 2023 deposition does not change the fact that Home Depot still has not provided any explanation for why it did not discover before the 2015 Declaration that it had changed its workday definition twice in the 1990s.

Defendant states in its Opposition that the August 3, 2023 Joint Statement filed with the Court states that the documents revealing the change in workday definition were found upon further efforts to locate trial witnesses. (Opp. Page 29:3-12.)  If it was just a matter of locating witnesses, then surely Home Depot could have discovered the truth years ago when it gathered information for its initial disclosures.  Besides, Defendant's self-serving statement in the Joint Statement is not admissible testimony, which Plaintiffs are entitled to.

A trier of fact could reasonably doubt Home Depot's veracity as they failed to investigate before making false statements to the Court and did not produce documents that are highly relevant to this litigation until six years after making the false statements. Taken together with the timeline of events surrounding the changes to the workday definition, a trier of fact could reasonably find that Home Depot's actions reveal the workday was defined to avoid paying overtime.

**B. Whether Home Depot Has a Good Faith Defense to the 203 and 226 Claims Is At Minimum a Triable Issue of Fact**

The actual facts here are that: 1) Home Depot changed its workday definition after opening stores in California and after being aware of California's daily overtime; 2) Home Depot changed its workday definition at least twice; (3) when California eliminated daily overtime and concurrent with a massive Home Depot expansion in California,[5] Home Depot changed back its workday definition from beginning at 4:00 a.m. to beginning at

---

[5] At the time that California re-enacted its California overtime laws, Home Depot was in the process of massively expanding its presence in California from 95 to 165 stores. Grant Decl. Exh. 3.

1  midnight; and (4) when California reinstituted the daily overtime requirement on January 1,
2  2000, Home Depot did not revert back to the 4:00 a.m. to 3:59 a.m. workday in California
3  or designate a second workday definition that would provide employees working more
4  than eight hour that crossed midnight overtime wages when due—which this Court and
5  others recognize it is permitted to do.[6]

6  Thus, the factors that led this Court to grant Home Depot's summary judgment
7  motion are no longer present. Instead, a trier of fact could reasonably infer from the actual
8  facts that Home Depot's failure to define its workday or define a second workday was
9  designed to avoid paying overtime. See *Jakosalem v. Air Serv Corp.*, No. 13-CV-05944-SI,
10 2014 WL 7146672, at *3 (N.D. Cal., Dec. 15, 2014) (citing *In re Wal–Mart Stores, Inc.
11 Wage & Hour Litig.,* 505 F.Supp.2d 609 (N.D.Cal.2007) (holding that plaintiffs stated a
12 claim for failure to pay overtime where employees worked a single shift in excess of eight
13 hours which crossed the day divide set by the employer)). "In arriving at this conclusion,
14 the *Wal–Mart* court was guided by the legislature's policy goals in enacting California's
15 overtime laws. In light of the fact that 'California's overtime laws are remedial and are to
16 be construed so as to promote employee protection.'" *Id.* (citing *Wal–Mart,* 505 F.Supp.2d
17 at 617(citing *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 340 (2004), "it
18 found the first sentence of Section 510(a)—which 'bluntly states [that] "[e]ight hours of
19 labor constitutes a day's work"'—to be dispositive." *Id.*  Moreover, under the summary
20 judgment standard, all inferences are to be drawn in favor of the party opposing a motion
21 for summary judgment. *Orr*, 285 F.3d at 772. Thus, Home Depot's good faith defense to
22 the 203 and 226 claims is at minimum a triable issue of fact. The Court should therefore
23 vacate the Order granting Defendant partial summary judgment on these derivative claims;
24 or decide that the Court's previous Order should be reversed.

25 **1. Home Depot Knew that It Was Avoiding Paying Daily Overtime by Using a Midnight-to-Midnight Workday Definition**

---

[6] "The beginning of an employee's workday need not coincide with the beginning of that employee's shift, and "an employer may establish different workdays for different shifts." *Bell v. Home Depot U.S.A.*, Inc., No. 212CV02499JAMCKD, 2019 WL 5787781, at *3 (E.D. Cal. Nov. 6, 2019) (citing DLSE Manual § 48.1.2.); *see also Jakosalem*, 2014 WL 7146672, at *3 (same).

1  The law is clear:  Employers cannot designate a workweek or workday that differs from their employees' work schedules without a **bona fide business reason** to do so, which does not include the primary objective of avoiding the obligation to pay overtime.  *Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361, 371 (2011) *disapproved of on other grounds by Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 846 (2015) ("an employer may designate a workweek used to calculate compensation that differs from the work schedule of its employees only if there is a bona fide business reason for doing so, which does not include the primary objective of avoiding the obligation to pay overtime."); *accord Lemus v. Denny's Inc.*, No. 10CV2061-CAB (WVG), 2015 WL 13740136, at *6 (S.D. Cal. July 31, 2015). Moreover, "the burden is on Home Depot to make this showing." *Henry v. Home Depot U.S.A., Inc.*, No. 14-CV-04858-JST, 2016 WL 39719, at *4 (N.D. Cal. Jan. 4, 2016). Home Depot has failed to meet its burden here, as it did in the related *Henry* case.

Here, Home Depot has presented no evidence supporting a finding of a *bona fide business reason* for its midnight-to-midnight workday definition, certainly not as of January 1, 2000 when California reinstated daily overtime laws. To the contrary, Home Depot claims it never analyzed the differences in overtime implications between the 4:00 a.m. and midnight workday definitions, but this contradicts its testimony admitting that "Home Depot does track overtime costs" and has a "general directive" that employees should work their scheduled eight-hour shift to hold down overtime costs.  (2nd Grant Decl., Ex. 6 Deposition of 30(b)(6) designee Barbara Pennington (June 30, 2017) at 32:11-33:9.)  It is therefore reasonable for the trier-of-fact to infer from that fact that Home Depot knew that maintaining a midnight-to-midnight workday was saving it from paying the daily overtime that it paid for the period that Home Depot had a 4:00 a.m. workday and that's why it kept the midnight-to-midnight workday definition when California reinstated its daily overtime laws as of January 1, 2000. In fact, at that exact time, Home Depot began a "strategic performance initiative" known as SPI 2000, which involved more employees working shifts that crossed midnight. (*Id.* at 25:20-28:19.) SPI 2000's purpose was to use "all of the equipment that's used to pack out merchandise, to have that operational when customers

were not in the store." (*Id.* at 28:21-29:2.) As Home Depot's other 30(b)(6) witness, Barnaby, testified, Home Depot knows that employees who work a qualifying shift that crosses midnight would be due overtime wages under a 4:00 a.m. workday definition, but not under a midnight workday definition. (2nd Grant Decl., Ex 5, Barnaby Tr. 134:18-135:8.) Leaving the midnight workday definition was therefore a conscious choice that Home Depot made when California reinstated its daily overtime laws.

Defendant attempts to rely on Plaintiffs' lay opinions of when the workday should begin. This is a specious argument. Plaintiffs are not experts in labor management, nor are they labor attorneys, nor are two Home Depot employees representative of the tens of thousands of class members at issue in this action. Thus, their work schedules and experiences are irrelevant to the workday definition issue. Home Depot cannot make any valid claim as to what constitutes a proper workday based only on two Plaintiffs' testimony.

Nor, as established in Plaintiffs' opening brief, can Defendant claim that its store hours provide a *bona fide business reason* for its midnight-to-midnight workday, because its California stores are generally open from 6:00 a.m. or 7:00 a.m. until 9:00 p.m. or 10:00 p.m. (Dkt. No. 153-2, Plaintiffs' Disputed Fact 2.) *See Henry.*, 2016 WL 39719, at *4 ("Home Depot stores are not open 24 hours per day, so when the Home Depot workday begins, there are no customers in its stores, and none will arrive for several hours.") Accordingly, because Home Depot's reasons for its workday definition is now a matter of disputed fact, the Court's Order must be vacated.

## III.  CONCLUSION

For the foregoing reasons, the Court should vacate the Order granting Defendant partial summary judgment on Plaintiffs' derivative Labor Code sections 203 and 226 claims not only because false evidence was a key basis for that ruling, but also because the actual facts establish that Home Depot's good faith defense to a finding that it willfully, knowingly, and intentionally failed to pay overtime wages when due to employees who worked more than eight hours that crossed midnight is at minimum a triable issue of fact, if not a basis for reversal.

Dated: February 20, 2024	Respectfully submitted,

                SETAREH LAW GROUP

By: /s/ Shaun Setareh
Shaun Setareh
Thomas Segal
Farrah Grant
Attorneys for Plaintiff Michael Henry and the Class

CAPSTONE LAW APC

By: _____
Melissa Grant
Robert Drexler
Molly DeSario
Jonathan Lee
Attorneys for Plaintiffs Sandy Bell, Martin Gama, and the Class

**PLAINTIFFS' REPLY ISO MOTION FOR RECONSIDERATION REGARDING SEPTEMBER 7, 2017 ORDER GRANTING PARTIAL SUMMARY JUDGMENT DUE TO DEFENDANT'S FALSE TESTIMONY**