

1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

MELISSA GRANT
310.712.8021 Direct
Melissa.Grant@capstonelawyers.com

April 4, 2024

<u>VIA ECF</u>

Subject:      *Bell and Henry v. Home Depot U.S.A., Inc.*
              Case No. 2:12-cv-02499

To the Honorable Court:

      Pursuant to the Court's Minute Order entered on March 28, 2024 (Dkt. No. 223), Plaintiffs Sandy Bell, Martin Gama, and Michael Henry submit the following letter brief providing supplemental authority regarding Plaintiffs' Motion for Reconsideration (Dkt. No. 214).

**Prior Ruling In This Case / Change in Workday Not Required:**

      In the present action, Judge Mendez stated in his 11/6/2019 Order (Dkt. No. 179) denying Defendants' motion for summary judgment: "Defendants understand [Section 48.12 of the DLSE Manual] as only proscribing <u>changes</u> to an employee's workday that are designed to evade overtime obligations. . . . That is to say: if an employer establishes a workday designed to evade overtime obligations but never changes it, the workday is valid under California law. . . . But as Plaintiffs argue, this reading of § 48.12 is tortured, contravenes common sense, and is unsupported by the cases Defendants cite. . . . it flirts with frivolity."

**Challenge to a Workday Already in Place:**

      *Jakosalem v. Air Serv Corp.,* No. 13-CV-05944-SI) 2014 WL 7146672, at *3 (N.D. Cal., Dec. 15, 2014) (plaintiff challenged defendant Air Serv Corp's calendar-day workday because it resulted in the failure to pay overtime to him and others who worked more than 8 hours that crossed the day divide. **Air Serv did not change its workday to a calendar day, that's just the workday it used**). (See Air Serv's

Motion for Partial Summary Judgment and the supporting Declaration of Megan Jones, attached respectively hereto as Exhibits A and B.)

**Remedial Purpose of Wage and Hour Laws:**

*Mendoza v. Nordstrom, Inc.*, 2 Cal.5th 1074, 1087 (2017) ("We agree that the remedial purposes of the wage and hour laws require they '"not [be] construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought to be accomplished.'" (citing *Industrial Welfare Com. v. Superior Court*, 27 Cal.3d 690, 702 (1980); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1026–27 (2012).)

*Jakosalem v. Air Serv Corp.,* 2014 WL 7146672, at *3 ("California's overtime laws are remedial and are to be construed so as to promote employee protection." (citations omitted).)

**When Workday Differs From Employees Schedules:**

*Ahmed v. Western Refining Retail, LLC*, No. 220CV08342VAPSKX) 2021 WL 4805302, at *2 (C.D. Cal., Aug. 4, 2021) ("an employer that designates a workday or workweek that differs from the schedule of its employees requires a "bona fide business reason for doing so." (quoting *Lemus v. Denny's Inc.*, No. 10CV2061-CAB-WVGx, 2015 WL 13740136, at *6 (S.D. Cal. July 31, 2015) (internal quotations omitted) (citing *Seymore v. Metson Marine, Inc.* 194 Cal. App. 4th 361, 371 (2011), overruled on other grounds by *Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833 (2015)); *Jakosalem v. Air Serv Corp.*, No. 13-CV-05944-SI, 2014 WL 7146672, at *4 (N.D. Cal. Dec. 15, 2014) (same)).

*Jakosalem*, 2014 WL 7146672 at *6 (denying defendant summary judgment because it failed to submit direct evidence of the *bona fide* business reason for its midnight-to-midnight workday definition other than evading overtime laws, or for maintaining a single workday instead of designating a second workday for employees who work more than 8 hours over the workday divide).

*Jakosalem*, 2014 WL 7146672, at *6 ("the fact that the DLSE Manual provides that 'an employer may establish different workdays for different shifts,' DLSE Manual para 48.1.2., may render suspect an employer's insistence on maintaining a single workday for all employees when it causes a significant reduction in overtime pay").

*Cummings v. Starbucks Corp.,* 2013 WL 2096435 *4 (C.D. Cal. 2013):  While an "employer may not designate its workweek in a manner that is designed primarily to evade **overtime**

compensation," there is no burden to prove a legitimate business purpose when an employer's workweek/**workday designation** coincides with its employees' work schedule.

**At Summary Judgment:**

*Jakosalem*, 2014 WL 7146672 at \*2 ("In deciding a summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor").

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986): ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.")

**DLSE Not Controlling:**

*Troester v. Starbucks Corp.,* 5 Cal.5th 829, 841 (2018)("Unlike wage orders the DLSE Manual is not binding on this Court . . . The DLSE has also issued opinion letters . . . Such advisory opinions are also not binding, although they may be a source of informed judgment to which courts and litigants may resort for guidance."); *Alvarado v. Dart Container Corp.,* 4 Cal.4th 542, 555 (2018); *Tidewater Marine Western, Inc. v. Bradshaw,* 14 Cal.4th 557, 568 (2018).

*Tomlinson v. Indymac Bank, F.S.B,* 359 F.Supp.2d 891, 895 (C.D.Cal.2005) (finding DLSE reasoning and examples unpersuasive because "in California, 'agency interpretations are not binding or ... authoritative' and '[c]ourts must, in short, independently judge the text of a statute.' ") (citing **\*618** *Bonnell v. Medical Board of California,* 31 Cal.4th 1255, 1264, 8 Cal.Rptr.3d 532, 82 P.3d 740 (2003)).

**Absence of Grandfather Provision:**

Neither the DLSE nor Wage Order 7-2001, subd. 3(A) state that an employer may maintain a calendar day workday that deprives employees of overtime wages when they work more than 8 hours that cross the day divide.

Neither Labor Code section 510 nor Wage Order 7-2001 include a grandfather provision for an employer's workday definition.

**Question Presented in *Naranjo v. Spectrum Security Services, Inc.*, California Supreme Court No. S279397:**

      Does an employer's good faith belief that it complied with Labor Code section 226, subdivision (a) preclude a finding that its failure to report wages earned was "knowing and intentional" as is necessary to recover penalties under Labor Code section 226, subdivision (e)(1)?

Sincerely,

Melissa Grant

Capstone Law APC
Attorneys for Plaintiffs Sandy Bell, Martin Gama, and the Class

Setarah Law Group
Attorneys for Michael Henry and the Class

# Exhibit A

KEITH A. JACOBY, Bar No. 150233
kjacoby@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California  90067.3107
Telephone:    310.553.0308
Facsimile:    310.553.5583

MICHELLE B. HEVERLY, Bar No. 178660
mheverly@littler.com
MAIKO NAKARAI-KANIVAS, Bar No. 271710
mnakarai@littler.com
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, California 94108.2693
Telephone:    415.433.1940
Facsimile:    415.399.8490

Attorneys for Defendant
AIR SERV CORPORATION (erroneously sued as
"AIR SERV CORP.")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIO JAKOSALEM, on behalf of himself, and on behalf of others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>AIR SERV CORP., and DOES 1 through 50,<br><br>Defendants. | Case No.  3:13-cv-05944-SI<br><br>CLASS ACTION<br><br>ASSIGNED TO THE HONORABLE SUSAN ILLSTON<br><br>**DEFENDANT AIR SERV CORPORATION'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT [F.R.C.P. 56(a)]**<br><br>Date:   November 12, 2014<br>Time:   9:00 a.m.<br>Dept.:  Courtroom 10, 19th Floor<br><br>Complaint Filed:  October 28, 2013 |

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

CASE NO. 3:13-cv-05944-SI

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION ........................................................................................................ 1

RELIEF SOUGHT ............................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

I.  INTRODUCTION .................................................................................................. 2

II.  STATEMENT OF FACTS ..................................................................................... 3

    A.  Air Serv Operations. .................................................................................. 3

    B.  How Overtime Is Earned, Calculated And Paid. ....................................... 3

        1.  Scenario Number One – Method Of Calculation Makes No Difference To The Employee. ............................................................. 4

        2.  Scenario Number Two – Plaintiff's Proposed New Method Of Overtime Calculation Results In Less Overtime For The Employee. ............ 4

        3.  Scenario Number Three – Plaintiffs Proposed New Method Of Overtime Calculation Favors Results In More Overtime For The Employee. ............................................................................................. 5

        4.  Application Of These Alternative Scenarios In The Real World. ................... 5

    C.  The Day Divide. ......................................................................................... 6

III.  ARGUMENT .......................................................................................................... 7

    A.  Legal Standard For Summary Judgment .................................................... 7

    B.  Plaintiff's Overtime Claim Fails As A Matter Of Law .............................. 8

        1.  California Law Requires Overtime Compensation For Hours Over Eight In A Workday, And Employers May Set Their "Workday" To Start At Any Time. ......................................................... 8

        2.  Air Serv Has Legitimate Business Reasons For Starting Its "Workday" At Midnight. .............................................................. 10

        3.  The Law Does Not Require Air Serv To Establish Individually-Defined Workdays For Each Employee ......................... 13

IV.  CONCLUSION ..................................................................................................... 14

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(a)]

CASE NO. 3:13-cv-05944-SI

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abshire v. Redland Energy Servs., LLC*,
   695 F.3d 792 (8th Cir. 2012) .................................................................................10

*Allen v. Gonzales Consulting Sevs., Inc.*,
   2011 U.S. Dist. LEXIS 4916 (W.D. Mich. 2011)..................................................11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................7

*Blasdell v. State of New York*,
   1992 U.S. Dist. LEXIS 20921 (N.D.N.Y. Sept. 8, 1992) ......................................11

*Burns v. Alcala*,
   420 U.S. 575 (1975)................................................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................7

*Cummings v. Starbucks Corp.*,
   2013 U.S. Dist. LEXIS 69260 (C.D. Cal. May 14, 2013) .....................................10

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000)................................................................................................9

*In Re Wal-Mart Stores, Inc.*,
   505 F.Supp.2d 609 (N.D. Cal. 2007) ...................................................................13

*Johnson v. Heckmann Water Resources, Inc.*,
   2014 U.S. App. LEXIS 13501 (5th Cir. July 14, 2014).........................................10

*Leever v. Carson City*,
   360 F.3d 1014 (9th Cir. 2004) ...............................................................................12

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)................................................................................................7

*Monzon v. Schaefer Ambulance Serv., Inc.*,
   224 Cal. App. 3d 16 (1990) ....................................................................................9

*Oliver v. Centerpoint Energy, Inc.*,
   2010 U.S. Dist. LEXIS 52546 (S.D. Tex. 2010) ..............................................11, 12

*Pappas v. The Kerite Co.*,
   16 Conn. Supp. 190 (Conn. C.P. 1949), RJN Exh. C. ..........................................11

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(a)]

ii.

CASE NO. 3:13-cv-05944-SI

*Parth v. Pomona Valley Hosp. Med. Center,*
   630 F.3d 794 (9th Cir. 2010) ..................................................................................12

*Seymore v. Metson Marine, Inc.,*
   194 Cal. App. 4th 361 (2011) ................................................................9, 10, 11, 12

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
   865 F.2d 1539 (9th Cir. 1989) ...................................................................................7

*Vranish v. Exxon Mobil Corp.,*
   223 Cal. App. 4th 103 (2014) ..................................................................................10

*Warner v. Zent,*
   997 F.2d 116 (6th Cir. 1993) .....................................................................................8

STATUTES

Cal. Lab. Code § 500 .............................................................................................6, 9, 13

Cal. Lab. Code § 510 ..................................................................................................1, 8

FLSA...........................................................................................................9, 10, 11

OTHER AUTHORITIES

29 C.F.R. § 778.105 ........................................................................................................9

Fed. R. Civ. P. 56(a) ...................................................................................................1, 7

Fed. R. Civ. P. 56(e) ......................................................................................................7

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

### NOTICE OF MOTION

**TO PLAINTIFF MARIO JAKOSALEM AND HIS ATTORNEYS OF RECORD:**

  **PLEASE TAKE NOTICE** that on November 12, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Susan Illston presiding, Defendant AIR SERV CORPORATION ("Defendant" or "Air Serv") will, and hereby does, move, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, for partial summary judgment in its favor and against Plaintiff MARIO JAKOSALEM ("Plaintiff" or "Jakosalem"). This motion is made on the ground that there are no genuine disputes of material fact or law as to the following issue: Air Serv's use of a midnight day divide is not a subterfuge employed to avoid the payment of overtime, and shifts over eight hours which cross over the day divide do not entitle Plaintiff to daily overtime pursuant to California Labor Code section 510 unless hours worked in the workday exceed eight hours. Fed. R. Civ. P. 56(a).

  This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities below, and the Declarations of Megan Jones and Michelle Heverly, and all the exhibits attached thereto, all of which are filed and served concurrently herewith, as well as the records, pleadings and papers on file in this action, and upon such other matters as may be presented at the time of the hearing on this Motion.

### RELIEF SOUGHT

  Air Serv respectfully requests that the Court issue an Order adjudicating that as a matter of law, Air Serv does not owe Plaintiff daily overtime pursuant to California Labor Code section 510 for shifts of eight or more hours that cross the day divide, unless the time on any one side of the divide exceeds eight hours.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(a)]

1.

CASE NO. 3:13-cv-05944-SI

1          <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.     INTRODUCTION**

3          For decades, California has recognized that each work day and work week has a

4   divide. Employers must designate a day divide and work week divide in order to determine whether

5   daily or weekly overtime is owed to an employee who works over eight hours in a day or over forty

6   hours in a week. Air Serv uses the same day divide used by the Romans, the military and everyday

7   people -- midnight. This midnight day divide is commonly used by employers in California,

8   including the state Department of Labor Standards Enforcement ("DLSE").[1] DLSE Enforcement

9   and Procedures Manual § 48.1.3.1 ("DLSE will use the calendar week, from 12:01 a.m. Sunday to

10  midnight Saturday, with each workday ending at midnight."), *see* Request for Judicial Notice In

11  Support of Defendant Air Serv's Motion for Partial Summary Judgment ("RJN"), Exh. E.

12         In this action, Plaintiff Mario Jakosalem ("Plaintiff") seeks to create a new category

13  of overtime, "shift overtime," whereby a shift over 8 hours earns overtime *whether or not it crosses*

14  *over into a new day.* Defendant Air Serv Corporation ("Air Serv") has been targeted to test this

15  fanciful and unsupported theory because, as a provider of around-the-clock airport support services,

16  it has a number of workers whose shifts periodically cross the designated day divide.

17         Plaintiff's bid to create an entirely new category of overtime must be rejected as a

18  matter of law. The plain language of the Labor Code and the IWC Wage Orders describe overtime

19  as being worked in a workday – *not a shift.* Plaintiff's theory, which has never been adopted by the

20  DLSE or any court in the State of California, would do nothing short of obliterate the meaning of a

21  day divide, writing it out of the law altogether. One court examining this issue has said that day

22  divides cannot be manipulated to act a as subterfuge to avoid the payment of overtime. Air Serv

23

24  [1]  The midnight day divide is espoused as the norm by the Society for Human Resources

25  Management (SHRM) and the California Chamber of Commerce. It is also part of the instructions published by the DLSE for submitting wage claims in California, and is the standard used by

26  employers within and outside the state, including, as examples, the University of California system, the Cal-State University system, Northrop Grumman, Sur la Table, Kings County Association, the

27  California Restaurant Association and the Bay Area Builders Exchange. Even the San Francisco Legal Aid society instructs its clients that the workday generally starts at 12:01 a.m. and ends at

28  midnight. See Exhibit A to the Declaration of Michelle Heverly ("Heverly Dec."), with excerpts from various policies and manuals indicating the midnight day divide.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]                    2.                         CASE NO. 3:13-cv-05944-SI

does nothing of the sort – it staffs its operations at airports nationwide (primarily LAX and SFO in California), around the clock with workers who never, sometimes or regularly cross the day divide. No matter where Air Serv designated the day divide, some employees would cross it, and others would not. Plaintiff has no evidence the day divide was selected at midnight to somehow reduce overtime earned. In fact, the opposite is true, as three times as many employees work during the day than overnight. Moreover, under some scenarios, this fanciful "shift overtime" structure would reduce the amount of overtime paid to employees.

For all of the reasons stated herein, Air Serv respectfully requests that this Court adjudicate as a matter of law that Plaintiff may not recover overtime pay for shifts over 8 hours that cross the midnight day divide, in cases where daily or weekly overtime would not otherwise be owed.

## II.     STATEMENT OF FACTS

### A.     Air Serv Operations.

Air Serv provides support to airlines and freight companies at airports in California and throughout the United States. (Declaration of Megan Jones ("Jones Dec."), ¶ 4.) Air Serv performs services needed by the airport itself and services that are often performed by airlines directly, including cargo handling, aircraft cleaning, janitorial services at airports, ground transportation, passenger services, ramp handling, and security. (*Id.*) Air Serv workers work whenever the airport operates, 24-hours a day. (Jones Dec., ¶ 5.) Because Air Serv workers work throughout the day and night, as permitted under longstanding California law, Air Serv established its official "workday" for payroll and business purposes for *all* employees as a consecutive 24-hour period that begins at 12:01 a.m. and ends the following calendar day at midnight. (Jones Dec., ¶ 6.) Notably, this midnight day divide was not unilaterally decided by Air Serv – it is a bargained for term that is memorialized in the collective bargaining agreement governing the terms of employment for Plaintiff and the other putative class members. (Jones Dec., ¶ 6, Exhibits A-E.)

### B.     How Overtime Is Earned, Calculated And Paid.

The day divide selected by Air Serv was consistently applied to all employees,

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
-an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

3.

CASE NO. 3:13-cv-05944-SI

regardless of shift length or timing. (Jones Dec., ¶ 7.) Employees earn and are paid overtime on both sides of the day divide and even when it is crossed. (*Id.*) Thus, on most days, the method of calculation has no impact on the amount of overtime earned or paid. (*Id.; see* example provided in Section B(1) below.) And, when it does make a difference, that difference is sometimes in the employee's favor and sometimes to the employee's detriment. (*See* examples provided in Section B(2) and B(3) below.) Consider, for example, the following three scenarios:

**1. Scenario Number One – Method Of Calculation Makes No Difference To The Employee.**

A review of Jakosalem's time records for a single week in 2012 shows the following:

| Workday | Shift Dates | Shift Hours | Total Hours Worked in Shift (less .5 hr lunch) | Total Hours Worked in Workday |
|---|---|---|---|---|
| | | | | 3/12 = 2.0 |
| Monday | March 12-13, 2012 | 10pm – 6:00 am | M = 7.5 | 3/13 = 7.5 |
| Tuesday | March 13-14, 2012 | 10pm – 7:45 am | T = 9.25 | 3/14 = 9.25 |
| Wednesday | March 14-15, 2012 | 10pm – 8:15 am | W = 9.75 | 3/16 = 9.75 |
| Thursday | March 15-16, 2012 | 10pm – 7:30 am | Th = 9 | 3/16 = 9 |
| Friday | March 16-17, 2012 | 10pm – 6:30 am | Fr = 8 | 3/17 = 6.5 |
| TOTAL OVERTIME HOURS OWED | | | Shift Method =4.0 | Workday Method = 4.0 |

Under Plaintiff's theory (that overtime should be calculated based on the shift), Plaintiff would be owed a total of four overtime hours for the week. (Jones Dec., ¶ 9.) Under the workday method of payment recognized by the Labor Code and used by Air Serv, Plaintiff is owed and was paid for working a total of four overtime hours in the week. (*Id.*) In other words, in a normal workweek, the method of overtime calculation *generally makes no difference to the employee.*

**2. Scenario Number Two – Plaintiff's Proposed New Method Of Overtime Calculation Results In Less Overtime For The Employee.**

In the second scenario, the employee works a shift on Monday that starts at 10pm and ends at 6:30 am Tuesday, with a half hour lunch. On Tuesday evening the employee comes back and works from 6pm to midnight, with no lunch. There are two possible ways to calculate overtime:

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]                    4.                    CASE NO. 3:13-cv-05944-SI

| Method of Calculation | Hours Worked | Total Overtime Owed |
|---|---|---|
| Workday (Air Serv/DLSE Method) | On Monday the employee has worked only 2 hours and is entitled to no overtime, but on Tuesday the employee has worked a total of 12 hours, and is entitled to four hours of overtime (midnight to 6:30, less lunch plus 6pm to midnight) | 4 hours |
| Shift (Plaintiff's Method) | For the first shift the employee has worked only eight hours and is not entitled to overtime and for the second shift the employee has only worked for six hours and is again not entitled to overtime. | 0 hours |

**3.    Scenario Number Three – Plaintiffs Proposed New Method Of Overtime Calculation Favors Results In More Overtime For The Employee.**

Under the final scenario the employee works a single shift starting on Monday at 10pm and ending at 9:30 am Tuesday, but does not come back to work the next evening.  Using both methods overtime would be calculated as follows:

| Method of Calculation | Hours Worked | Total Overtime Owed |
|---|---|---|
| Workday (Air Serv/DLSE Method) | On Monday the employee has worked only 2 hours and is entitled to no overtime, but on Tuesday the employee has worked a total of 9 hours, and is entitled to one hour of overtime (midnight to 9:30, less lunch). | 1 hour |
| Shift (Plaintiff's Method) | The total shift is 11 hours and the employee is entitled to three hours of overtime. | 3 hours |

**4.    Application Of These Alternative Scenarios In The Real World.**

In two of the three scenarios, Air Serv's method of calculation is either net neutral or actually benefits the employee.  Although in the final scenario the employee does not get the benefit,

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

5.

CASE NO. 3:13-cv-05944-SI

1   this situation only occurs when the employee's shift exceeds 8 hours, crosses the day divide and the

2   employee does not work a subsequent shift (such as at the end of the week[2]

3      **C.    The Day Divide.**

4           There is no evidence that Air Serv moved the day divide around for different work

5   groups to tamp down overtime or intentionally designated its "workday" to start at midnight to evade

6   paying overtime to non-exempt employees who worked overnight shifts.  Rather, there are several

7   important, *bona fide* reasons for Air Serv's "workday" designation.  First and foremost, California

8   Labor Code section 500 and all of the IWC Wage Orders define the "workday" as a discrete 24-hour

9   period.  As a matter of law then, *some designated workday must therefore exist.*  The "workday" Air

10  Serv chose is divided as the calendar is divided – at midnight.  This is also the workday used for Air

11  Serv on a nationwide basis.

12          Second, because Air Serv operates at all hours of the day at SFO and LAX, there is

13  no basis for Plaintiff or anyone else to contend that the midnight "workday" is being used as a

14  subterfuge to pay less overtime.  Others whose work do not cross the day divide – and there are

15  hundreds of such employees – earn *more* overtime with a "workday" starting at midnight because

16  their entire shifts fall within one workday.  For example, a review of the employees working at SFO

17  on one randomly selected workday (February 7, 2014) shows that 257 of the 588 working earned

18  some amount of overtime.  And of those earning overtime, only 86 worked across the midnight day

19  divide, whereas 256 of the employees worked over the noon hour.  (Jones Dec., ¶ 8, Exhibit F.)

20  Thus a noon divide (or other time during the day) would have impacted even more employees, and

21  there is simply no evidence that Air Serv selected midnight to gain benefit over its employees.

---

[2] When the employee works one overnight shift and then comes back the next day for another
overnight shift, any hours over eight in a workday are counted by virtue of the second shift.  Using
the example above:

| Tuesday | March 13-14, 2012 | 10pm – 7:45 am | T = 9.25 | 3/14 = 9.25 |
| Wednesday | March 14-15, 2012 | 10pm – 8:15 am | W = 9.75 | 3/16 = 9.75 |

The employee's second workday consists of work between midnight and 7:45 am and then again
from 10 pm to midnight, for a total of 9.25 hours once the lunch period is subtracted.  If the full
second shift were counted as overtime (from 10pm to 8:15 am the next day), the overtime would be
double counted.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL              6.              CASE NO. 3:13-cv-05944-SI
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

1    Third, it is common for an employee whose shift crosses the day divide to work a

2  second shift later in the day, and in that case, overtime will be earned *before* the eighth hour of that

3  second shift is reached, because the post-midnight work will have started the hour count for the day.

4  For example, if an employee works from 8 p.m. to 6 a.m., and then again at 8 p.m. later that day, the

5  employee will start earning overtime at 10 p.m., after the second hour of work on his second shift,

6  because he already worked six hours that morning.

7    Fourth and finally, the day divide is part of the union contract governing the terms

8  and conditions of Plaintiff's employment.  (Jones Dec., ¶ 6, Exhibits A-E.)  It was negotiated by the

9  employees, through their union representatives, during arm's length negotiations.  (*Id.*).  Thus there

10  is nothing that raises the specter of unfairness.

11  **III.    ARGUMENT**

12    **A.    Legal Standard For Summary Judgment.**

13    Summary judgment is appropriate when the pleadings, affidavits, and other material

14  show that there is no genuine dispute as to any material fact, and the moving party is entitled to

15  judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party is not required to produce

16  evidence showing the absence of a material fact or negating the opposing party's claim.  *See Lujan v.*

17  *Nat'l Wildlife Fed'n*, 497 U.S. 871, 884-85 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

18  (1986).  Rather, its burden is satisfied by showing an absence of evidence to support the nonmoving

19  party's case.  *See Celotex Corp.*, 477 U.S. at 323-25.  On the other hand, to withstand summary

20  judgment, the nonmoving party must go beyond the pleadings and offer specific facts, based on

21  admissible evidence, demonstrating that there is a genuine dispute of material fact.  Fed. R. Civ. P.

22  56(e); *see also Celotex Corp.*, 477 U.S. at 324.  "A 'scintilla of evidence' or evidence that is 'merely

23  colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material

24  fact."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).  The

25  "materiality" requirement ensures that "only disputes over facts that might affect the outcome of the

26  suit" will preclude entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

27  (1986). In this case, then, it is Plaintiff's burden to raise a triable issue that the placement of the day

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

7.

CASE NO. 3:13-cv-05944-SI

1    divide *is* a subterfuge to avoid paying over time.

2    **B.    Plaintiff's Overtime Claim Fails As A Matter Of Law.**

3    Plaintiff alleges that by using a uniform "workday" that begins at midnight, Air Serv

4    underpaid overtime compensation to employees whose shifts exceeded eight hours, but spanned two

5    calendar days.  However, as discussed further below, Plaintiff's overtime claim fails as a matter of

6    law because its method of paying overtime is wholly consistent with the Labor Code and IWC Wage

7    Orders, and the undisputed evidence shows that Air Serv has *bona fide* business reasons for using a

8    midnight day divide.

9    **1.    California Law Requires Overtime Compensation For Hours Over Eight
10         In A Workday, And Employers May Set Their "Workday" To Start At
          Any Time.**

11    California Labor Code section 510 states, in relevant part:  "Eight hours of labor

12    constitutes a day's work.  Any work in excess of eight hours *in one workday* . . . shall be

13    compensated at the rate of no less than one and one-half times the regular rate of pay for an

14    employee."  Cal. Lab. Code § 510(a) (emphasis added).  Notably, the statute does *not* say that

15    overtime compensation must be paid for work over eight hours "in one shift."  The statute instead

16    makes clear that entitlement to overtime compensation is based on the "workday."[3]

17    The United States Supreme Court has concluded that "a fundamental canon of

18    statutory construction is that, unless otherwise defined, words will be interpreted as taking their

19    ordinary, contemporary, common meaning." *Burns v. Alcala*, 420 U.S. 575, 580–81 (1975).

20    Similarly, under the general cannon of statutory construction *expression unius est exclusion alterius,*

21    the specific mention of one thing in a statute implies an intent on the part of the legislature to

22    exclude another. *Warner v. Zent,* 997 F.2d 116, 137 (6th Cir. 1993).  In other words, the fact that the

23    statute says "workday" and not "shift" means something.

24    The term "workday" is commonly defined on "a day on which work is performed as

25    distinguished from a day off," or "the period of time in a day during which work is performed."

26

27    [3] This language is mirrored in the DLSE manual, which expressly notes that "overtime is due based
      on the hours worked in any given **workday**."   DLSE Manual §48.1.2; citing O.L. 1993.12.09
28    (emphasis added); RJN Exh. D..

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL                    8.                    CASE NO. 3:13-cv-05944-SI
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

1    Merriam Webster, 2014 Merriam-Webster, Inc.  In the context of the Labor Code and the application

2    to working employees, it means exactly what it says – the 24 hour period during which an employee

3    performs work, as defined by the employer.  *Food and Drug Admin. v. Brown & Williamson*

4    *Tobacco Corp.*, 529 U.S. 120, 132 (2000) (the words of a statute must be read in their context and

5    with a view to their place in the overall statutory scheme).  Plaintiff's attempt to rewrite the statute

6    and count overtime based on an employee's shift therefore fails.

7            In addition, the Labor Code specifically provides for day divides in setting a

8    "workday."  *See* Cal. Lab. Code § 500(a) (defining "workday" as "any consecutive 24-hour period

9    commencing at the same time each calendar day").  This further undermines Plaintiff's theory,

10   because by claiming that daily overtime is owed for any *shift* over eight hours, regardless of what

11   "workday" it falls on, Plaintiff is essentially writing day divides out of the law.

12           Day divides are not only a statutorily mandated payroll element -- employers are

13   given substantial latitude in determining when a "workday" begins, and they certainly have to

14   establish it to begin *sometime*.  *See* DLSE Manual § 48.1.2 ("A workday . . . may begin at any time

15   of day"); RJN Exh. D; *cf. Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361, 368 (2011)

16   ("Section 500 undoubtedly affords an employer significant flexibility in the designation of a

17   workweek").  "The beginning of an employee's workday need not coincide with the beginning of

18   that employee's shift . . . ."  DLSE Manual § 48.1.2; RJN Exh. D.  Federal law (which only provides

19   for weekly overtime) similarly gives employers the discretion to designate the start and end of a

20   "workweek."  *See* 29 C.F.R. § 778.105 (under the FLSA, "[a]n employee's workweek . . . need not

21   coincide with the calendar week but may begin on any day and at any hour of the day").[4]  Here, Air

22   Serv's workday starts at midnight for *all employees nationwide*, and is set forth in multiple collective

23   bargaining agreements, including the one covering Plaintiff and other SFO employees.  (Jones Dec.,

24   ¶ 6.)

25

26

27   _____

[4] Authorities construing federal wage statutes, such as the FLSA, provide "persuasive guidance" to

28   courts interpreting California's wage laws.  *Monzon v. Schaefer Ambulance Serv., Inc.*, 224 Cal.
     App. 3d 16, 31 (1990).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL          9.          CASE NO. 3:13-cv-05944-SI
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

### 2. Air Serv Has Legitimate Business Reasons For Starting Its "Workday" At Midnight.

Because employers are free to set "workdays" that begin at different times than the work schedules or shifts of its employees, there may be circumstances where some employees are paid less in overtime than if the start of the "workday" and their work schedules or shifts coincided. However, even in such circumstances, the employer's "workday" designation is lawful, so long as there is a legitimate business reason for it, and it is not "designed primarily to avoid overtime compensation." *Seymore*, 194 Cal. App. 4th at 370; *see also Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 113-14 (2014) (following *Seymore* and affirming summary judgment for the employer because plaintiffs had failed to present evidence that the employer "deliberately and artificially manipulated plaintiffs' workweek and work schedules for the primary purpose of avoiding statutory overtime payments"); *Cummings v. Starbucks Corp.*, 2013 U.S. Dist. LEXIS 69260, *10-11 (C.D. Cal. May 14, 2013) (following *Seymore*); *cf. Abshire v. Redland Energy Servs., LLC*, 695 F.3d 792, 794-95 (8th Cir. 2012) ("[N]umerous federal and state courts have concluded that an employer does not violate the FLSA merely because, under a consistently-designated workweek, its employees earn fewer hours of overtime than they would if the workweek was more favorably aligned with their work schedules"); *Johnson v. Heckmann Water Resources, Inc.*, 2014 U.S. App. LEXIS 13501, *11-12 (5th Cir. July 14, 2014) (following *Abshire* and affirming summary judgment in the employer's favor because "[t]he mere fact that an established workweek does not maximize an employee's overtime does not, standing alone, violate the FLSA").

*Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361 (2011), is instructive. There, all employees who worked aboard the employer's vessels worked "hitches" of fourteen consecutive days, which started at noon on a Tuesday and ended two weeks later, but the employer chose to start its "workweek" at 12:00 a.m. on Monday. As a result, crew members received only one seventh-day premium, instead of two. The Court of Appeals reversed summary judgment in favor of the employer, finding that there was no legitimate basis for the workweek designation except to avoid payment of overtime. *Seymore*, 194 Cal. App. 4th at 371. Despite ruling against the employer under the unique facts of that particular case (which are not applicable here), the *Seymore* court affirmed

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

10.

CASE NO. 3:13-cv-05944-SI

1   that "*an employer may designate a workweek used to calculate compensation that differs from the*

2   *work schedule of its employees . . . if there is a bona fide business reason for doing so*, which does

3   not include the primary objective of avoiding the obligation to pay overtime." *Id.*[5]

4         In reaching this conclusion, the *Seymore* court also specifically noted that where

5   employees work differing shifts, which start at different times, some employees may work "without

6   the benefit of the overtime premium otherwise required" if the time falls into a different workweek.

7   *Seymore*, 194 Cal.App.4th at 369.  The same principle applies here, as Air Serv employees work

8   different shifts during the day and receive different days off during the week. (Jones Dec., ¶ 10.)  In

9   that situation, even though the workday/workweek designation "resulted in additional compensation

10  for some employees," it had "the opposite effect for other employees." *Seymore*, 194 Cal.App.4th at

11  372, fn. 7, *citing, Blasdell v. State of New York*, 1992 U.S. Dist. LEXIS 20921, *6 (N.D.N.Y. Sept.

12  8, 1992).  Given this net neutral effect, any claim by Plaintiff that the workday designation is a

13  "subterfuge" to avoid the payment of overtime is easily dismissed.

14        It is undisputed that Air Serv has *bona fide* business reasons for starting its workday

15  at midnight, and that its workday designation is not designed to evade the overtime requirements.

16  First, because Air Serv operates around the clock at SFO and LAX, as well as various airports

17  nationwide, it selected a "workday" designation that coincides with the calendar day – *i.e.*, starting at

18  _____

[5] In support of its holding, the court pointed to several decisions denying overtime claims under the
19  FLSA with similar facts.  *See Seymore*, 194 Cal.App.4th at 371-72.  Among the cases the court cited
to are:  *Allen v. Gonzales Consulting Sevs., Inc.*, 2011 U.S. Dist. LEXIS 4916, *10 (W.D. Mich.
20  2011) (upholding summary judgment in favor of the employer, even though the workweek began in
the middle of one of plaintiff's shifts, because plaintiff had no admissible evidence rebutting the
21  employer's *bona fide* business reasons for the designation); *Pappas v. The Kerite Co.*, 16 Conn.
Supp. 190, 192 (Conn. C.P. 1949) (no right to overtime under the FLSA where the "workweek" was
22  based on daytime employees' Monday to Monday schedule, but the plaintiff worked an alternating
schedule of seven nights on and seven nights off beginning on Thursdays, because the FLSA "does
23  not control the right of the employer to determine the beginning or end of a work week," and there
was "no subterfuge employed to defeat plaintiff's right to overtime pay"), RJN Exh. C.; *Blasdell v.
24  State of New York*, 1992 U.S. Dist. LEXIS 20921, *6 (N.D.N.Y. Sept. 8, 1992) (granting summary
judgment for employer, and finding no violation of the FLSA where workweek was designated to
25  begin on Thursday rather than Sunday because the FLSA does not require that the workweek begin
on any given day of the week, just that the "starting day remain constant and that the employees not
26  work more than 40 hours within the 168 hour week without receiving overtime compensation");
*Oliver v. Centerpoint Energy, Inc.*, 2010 U.S. Dist. LEXIS 52546, *15 (S.D. Tex. 2010) (no
27  violation of the FLSA where employees were scheduled to work ten consecutive days, but because
of the "workweek" designation, did not earn overtime compensation, because the designation was
28  constant and did not change).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]          11.          CASE NO. 3:13-cv-05944-SI

1   midnight. (Jones Dec., ¶¶ 6-7.)  Moreover, because of the 24-hour nature of Air Serv's operations,

2   there is no way that Air Serv's day divide can be an artifice designed to avoid the payment of

3   overtime.  The undisputed evidence shows that employees whose shifts do not span two calendar

4   days earn *more* overtime with a midnight day divide, than if the "workday" started at some other

5   time. (Jones Dec., ¶ 8.)  For example, if Air Serv had designated noon as a day divide, it would

6   operate to minimize the overtime paid, as the bulk of the employees would end up with shifts

7   spanning two workdays.  (*Id.*)  Thus, any designation *other than midnight* would be suspicious and

8   potentially proscribed by *Seymore.*[6]

9           Even as to employees like Plaintiff who work overnight shifts, the midnight day

10   divide does not necessarily operate to reduce overtime compensation.  Rather, if an employee works

11   a second shift later in the day, he or she begins earning overtime pay *before* the eighth hour, because

12   work performed earlier that morning is included in the hour count for the "workday."  And as

13   described in scenario two above, the midnight day divide actually operates to pay some employees

14   <u>more overtime</u> than any other designation would.

15           Finally, the fact that the collective bargaining agreements establish the "workday" as

16   starting at 12:01 a.m. demonstrates that Plaintiff and other covered employees consented to the

17   divide, and is further evidence that the midnight day divide is *bona fide*.  *See Parth v. Pomona*

18   *Valley Hosp. Med. Center*, 630 F.3d 794, 802 n.2 (9th Cir. 2010) (finding employee's consent to

19   reduced regular rate is a factor in determining whether the rate was *bona fide*); *Leever v. Carson*

20   *City*, 360 F.3d 1014, 1018 (9th Cir. 2004) (term of collective bargaining agreement is agreed to by

21   employee, even if he or she did not directly participate in contract negotiations, because union acted

22   as employee's representative and exclusive bargaining agent).  In fact, even the *Seymore* court

23   agrees that the fact that work designations are contained among the terms of a collective bargaining

24   agreement, it is inconceivable that the provision was added simply to avoid overtime.  *Seymore*, 194

25   Cal.App.4th at 372; *citing, Oliver v. Centerpoint Energy, Inc.*, 2010 U.S. Dist. Lexis 52546 (S.D.

26   Tex.2010).

[6] As noted, the most common designation and the least suspect of them all is the one used by Air Serv here. (Heverly Dec., Exhibit A.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]          12.          CASE NO. 3:13-cv-05944-SI

3.      **The Law Does Not Require Air Serv To Establish Individually-Defined Workdays For Each Employee.**

Air Serv anticipates that in a desperate attempt to save his overtime claim, Plaintiff may argue that Air Serv is required to individually tailor its "workday" to employees' shifts, so that no employees' shifts span across two workdays.  However, California law does not impose such a requirement on employers.   Nowhere in the California Labor Code or Industrial Welfare Commission's wage orders is there a requirement that each employee's "workday" be unique to the employee, so that his or her shifts fall within one workday.  Nor do the Labor Code or wage orders require that employees who work shifts in excess of eight hours, but which are split into two "workdays," be paid overtime compensation.  To the contrary, both the Labor Code and wage orders define the term "workday" as "any consecutive 24-hour period commencing at the same time each calendar day."  *See* Cal. Lab. Code § 500(a); IWC Wage Order No. 9, § 2(R); DLSE Manual §48.1.2; RJN Exh. D.

The absence of a requirement of individualized "workdays" under California law recognizes the reality that implementing such a requirement would, as a practical matter, be impossible for employers.  If Air Serv had to maintain a separate "workday" for each of the nearly 3,500 employees in the putative class, then Air Serv could never "end" the day for business and payroll purposes, because each employee's day would "end" at different times.  (Jones Dec., ¶ 10.) This would be especially acute for a 24 hour operation such as Air Serv's.  Additionally, placing such a requirement on employers would make it impossible to efficiently and accurately run payroll for all employees at the end of the pay period, which the law requires, because there would not be any uniformity in how the "workday" is defined.  (*Id.*)  For these reasons, the law does not – and has never – required employers to individually tailor the start and end time of the "workday" to employees' shifts.  The Court should not impose a contrary standard here.

Finally, Air Serv anticipates Plaintiff will attempt to rely on *In Re Wal-Mart Stores, Inc.*, 505 F.Supp.2d 609, 617-18 (N.D. Cal. 2007) in which a district court judge declined to grant a motion to dismiss an overtime claim which similarly asserted that any shift exceeding 8 hours was overtime enabling, notwithstanding the establishment of a day divide.  That decision on a pleading

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [F.R.C.P. 56(A)]

13.

CASE NO. 3:13-cv-05944-SI

motion does not constitute an affirmative finding on the merits, and even if it did, this Court is bound to follow California substantive law, which unequivocally fails to endorse this new category of overtime.  More importantly, the claim on which the motion was based (the third cause of action for failure to pay overtime), was later <u>voluntarily dismissed</u> by the parties, presumably after the plaintiff conceded that his ridiculous theory had no support in the law.  (RJN Exh. A and B.[7])  The same is true of Plaintiff Jakosalem – he has no basis in law or in fact for his claim and summary adjudication is properly granted.

## IV.   CONCLUSION

For the foregoing reasons, Air Serv respectfully requests that the Court grant its motion for partial summary judgment, and adjudicate in its favor Plaintiff's claim that Air Serv unlawfully failed to pay Plaintiff overtime compensation by designating its "workday" to start at midnight.

Dated: October 3, 2014

*/s/ Michelle B. Heverly*
KEITH A. JACOBY
MICHELLE B. HEVERLY
MAIKO NAKARAI-KANIVAS
LITTLER MENDELSON, P.C.
Attorneys for Defendant
AIR SERV CORPORATION

Firmwide:128401257.5 075704.1005

---

[7] The federal case was dismissed by stipulation because of a similar state case that had been previously pending.  The state case was thereafter voluntarily dismissed on Plaintiff's own motion.  (RJN Exh. A and B.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

# Exhibit B

1   KEITH A. JACOBY, Bar No. 150233
    kjacoby@littler.com
2   LITTLER MENDELSON, P.C.
    2049 Century Park East, 5th Floor
3   Los Angeles, California  90067.3107
    Telephone:   310.553.0308
4   Facsimile:   310.553.5583

5   MICHELLE B. HEVERLY, Bar No. 178660
    mheverly@littler.com
6   MAIKO NAKARAI-KANIVAS, Bar No. 271710
    mnakarai@littler.com
7   LITTLER MENDELSON, P.C.
    650 California Street, 20th Floor
8   San Francisco, California 94108.2693
    Telephone:   415.433.1940
9   Facsimile:   415.399.8490

10  Attorneys for Defendant
    AIR SERV CORPORATION (erroneously sued as
11  "AIR SERV CORP.")

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16
    MARIO JAKOSALEM, on behalf of          Case No.  3:13-cv-05944-SI
17  himself, and on behalf of others similarly
    situated, and the general public,       **DECLARATION OF MEGAN JONES IN**
18                                           **SUPPORT OF DEFENDANT'S MOTION**
                      Plaintiff,            **FOR PARTIAL SUMMARY JUDGMENT**
19                                           **[F.R.C.P. 56(a)]**
             v.
20                                          Date:   November 7, 2014
    AIR SERV CORP., and DOES 1 through      Time:   9:00 a.m.
21  50,                                     Dept.:  Courtroom 10, 19th Floor

22                    Defendants.

23                                          Complaint Filed:  October 28, 2013

24

25  I, MEGAN JONES, hereby declare as follows:

26        1.     I am the Senior Vice President of Human Resources for Air Serv Corporation (Air

27  Serv), the Defendant in the above entitled action.  All of the information set forth herein is based on

28

DECLARATION OF MEGAN JONES ISO
DEFS MOTION FOR PARTIAL SUMMARY          Case No.  3:13-cv-05944-SI
JUDGMENT [F.R.C.P. 56(A)]

1    my personal and first-hand knowledge and if called to testify and sworn as a witness, I could and

2    would competently testify thereto.

3         2.      I have been the Senior Vice President of Human Resources Advisor for the Air Serv

4    since 2007.  In this role, I am responsible for Air Serv's human resources functions worldwide, and I

5    am familiar with the general operations of Air Serv within and outside of California.

6         3.      Plaintiff Mario Jakosalem was an employee of Air Serv who worked at San Francisco

7    airport as a cabin cleaner from June 13, 2005 to October 1, 2012.  It is my understanding that

8    Plaintiff Jakosalem generally worked the overnight shift, which was from 10:00 pm to 6:30 am.

9         4.      Air Serv provides support to airlines and freight companies at airports in California

10   and throughout the United States.  It performs services needed by the airport itself and services that

11   are often performed by airlines directly, including cargo handling, aircraft cleaning, janitorial

12   services at airports, ground transportation, passenger services, ramp handling, and security.

13        5.      Air Serv workers work whenever the airport operates, often 24-hours a day.  Most Air

14   Serv employees work during the day, but at airports with overnight operations, some percentage of

15   the employees work overnight shifts.   San Francisco International (SFO) and Los Angeles

16   International (LAX) airports both have overnight operations.  Certain Air Serv employees, including

17   Jakosalem, clean plane interiors overnight, when the planes are not flying.

18        6.      Air Serv established its official "workday" for payroll and business purposes for *all*

19   employees nationwide as a consecutive 24-hour period that begins at 12:01 a.m. and ends the

20   following calendar day at midnight.  The midnight day divide is a bargained for term that is

21   memorialized in the collective bargaining agreement governing the terms of employment for

22   Plaintiff and the other putative class members.  See, as examples, **Exhibits A-E,** which are true and

23   correct excerpts from various collective bargaining agreements between Air Serv and the unions that

24   represent its employees at SFO and LAX, which entered into during the identified class period.

25   **Exhibit A** is the collective bargaining agreement that governed the terms and condition of Mario

26   Jakosalem's employment, and the current version of the same contract is identified as **Exhibit B**.

27        7.      The day divide selected by Air Serv was consistently applied to all employees,

28   regardless of shift length or timing.  The day divide is used to calculate overtime when employees in

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DECLARATION OF MEGAN JONES ISO
DEFS MOTION FOR PARTIAL SUMMARY
JUDGMENT [F.R.C.P. 56(A)            2.                    Case No.  3:13-cv-05944-SI

1 | California work over eight hours in a day or forty hours in a week.  Employees earn and are paid

2 | overtime on both sides of the day divide and even when it is crossed.

3 |   8.   Air Serv maintains time records (clock in and out) and pay detail records (amounts

4 | paid) for each of its employees.  Attached hereto as **Exhibit F** is a true and correct copy of the time

5 | records and pay detail records for one randomly selected day for Air Serv employees working at

6 | SFO.  The random day selected is February 7, 2014.  There were 588 employees who worked at Air

7 | Serv in SFO on this day, and 257 of them were paid some amount of overtime.  Only 86 of the 588

8 | employees worked shifts that crossed the midnight day divide.   Of the same population, 256

9 | employees worked over the noon hour.

10 |   9.   During the week of March 12 through March 17, 2012, Plaintiff Jakosalem worked

11 | the 10 pm to 6:30 am shift at SFO.  The exact times he worked during this week are indicated in the

12 | chart below.

| Workday | Shift Dates | Shift Hours | Total Hours Worked in Shift (less .5 hr lunch) | Total Hours Worked in Workday |
|---|---|---|---|---|
| | | | | 3/12 = 2.0 |
| Monday | March 12-13, 2012 | 10pm – 6:00 am | M = 7.5 | 3/13 = 7.5 |
| Tuesday | March 13-14, 2012 | 10pm – 7:45 am | T = 9.25 | 3/14 = 9.25 |
| Wednesday | March 14-15, 2012 | 10pm – 8:15 am | W = 9.75 | 3/16 = 9.75 |
| Thursday | March 15-16, 2012 | 10pm – 7:30 am | Th = 9 | 3/16 = 9 |
| Friday | March 16-17, 2012 | 10pm – 6:30 am | Fr = 8 | 3/17 = 6.5 |
| TOTAL OVERTIME HOURS OWED | | | Shift Method =4.0 | Workday Method = 4.0 |

21 |   10.   There are approximately 3,500 employees in the putative class identified in the

22 | Jakosalem matter.  It would be impossible for Air Serv's payroll and time keeping systems to

23 | establish a separate workday for each of these employees.  There are also many circumstances under

24 | which employees might work a different shift from their regular schedule, and it would be

25 | impossible for the Company to keep track of every employee's schedule on a daily basis for

26 | purposes of setting an individual day divide.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

DECLARATION OF MEGAN JONES ISO
DEFS MOTION FOR PARTIAL SUMMARY
JUDGMENT [F.R.C.P. 56(A)

3.

Case No.  3:13-cv-05944-SI

1    I declare under penalty of perjury under the laws of the United States of America and the

2    State of California that the foregoing is true and correct.

3        Executed this 2nd[th] day of October 2014, at Atlanta, Georgia.

4

5    _____

6    MEGAN JONES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

DECLARATION OF MEGAN JONES ISO            4.            Case No. 3:13-cv-05944-SI
DEFS MOTION FOR PARTIAL SUMMARY
JUDGMENT [F.R.C.P. 56(A)]