UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY BELL and MARTIN GAMA, individually and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiffs,<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation; JOHN BROOKS, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:12-cv-02499-DJC-CKD<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION OF PRIOR ORDER GRANTING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT BUT GRANTING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT |

This Court previously granted the Motion for Partial Summary Judgment brought by Defendants Home Depot U.S.A., Inc. ("Home Depot") and John Brooks ("Brooks") (together, "Defendants"), which sought to dismiss Plaintiffs' claim for violations of California Labor Code section 203 because Home Depot had a "good-faith dispute" whether any wages were due, arguing that "Home Depot defined its workday in the 1980s and *has never changed* the definition." (ECF No. 146 at 2

(emphasis in original).)  Defendants supported this argument, which the Court accepted, using the testimony and declaration of Home Depot's Director of Human Resources Operations, Christine Barnaby ("Barnaby"), who Defendants and Barnaby declared had personal knowledge of Home Depot's policies and practices related to the establishment of its work-day schedule.  Not so.  As it turns out, Barnaby had imperfect or incomplete knowledge and provided "mistaken testimony."  As a result, Plaintiffs now move for reconsideration of this Court's prior Order granting Defendants' Motion for Partial Summary Judgment (ECF No. 158).  For the reasons set forth below, the Court GRANTS Plaintiffs' Motion for Reconsideration Regarding the September 7, 2017 Order Granting Partial Summary Judgment (ECF No. 214).

However, despite the Court concluding that there is sufficient new evidence to reconsider its prior grant of partial summary judgment, upon reconsideration, the Court concludes that Plaintiffs have still failed to put forth any facts suggesting that Home Depot changed its workday definition to avoid California's overtime rules.  Indeed, there was no daily overtime rule at the time that Home Depot made the change, and Plaintiffs have not alleged that Home Depot made this workday definition change in 1998 to avoid any other overtime rules or California Labor Code requirements.  As a result, the Court again GRANTS Defendants' Motion for Partial Summary Judgment (ECF No. 158).

## BACKGROUND

### I.  Factual Background

Plaintiffs Sandy Bell and Martin Gama are California residents who are or were employed by Home Depot.  (*See* Class Action Compl. (ECF No. 1) ¶¶ 8–9 ("Complaint" or "Compl.").)  John Brooks was the regional manager while Plaintiffs worked for Home Depot and was responsible for managing them.  (*See id.* ¶ 11.)  Defendants employed Plaintiffs as non-exempt, hourly paid supervisors.  (*See id.* ¶¶ 25–26.)

Plaintiffs bring this lawsuit on behalf of themselves and others similarly situated, alleging that Defendants violated California's Labor Code.  Specifically, Plaintiffs

allege that Home Depot failed to provide overtime pay, failed to pay the minimum wage, failed to reimburse expenses, failed to provide compliant wage statements, and failed to provide timely payments. (*See* Compl. ¶¶ 29–38.) Plaintiffs seek damages and injunctive relief for these violations. (*See Id.* ¶¶ 5–39 of the prayer for relief.)

## II.   Procedural Background

Plaintiffs filed the Complaint in Sacramento County Superior Court on July 18, 2012 (Compl. at 26) and the action was removed to this Court on October 4, 2012. (*See* ECF No. 1.) After litigation over the propriety of removal, discovery eventually ensued, and Plaintiffs moved to certify their proposed classes on October 9, 2015. (*See* ECF No. 67.) Defendants then brought the first motion for partial summary judgment. (*See* ECF No. 72.) Both motions were granted in part and denied in part in June 2016. (*See* ECF Nos. 110, 113.) The Court certified only one proposed class, consisting of:

> All persons who worked for Defendant Home Depot U.S.A., Inc. in California as a non-exempt, hourly paid supervisor at any time from August 14, 2009 until [May 27, 2016] who worked at least one overnight shift that crossed midnight of more than eight hours, and who, as a result, was not paid overtime for the hours worked over eight hours during such overnight shift.

(ECF No. 110 at 1.) Similarly, the Court dismissed Plaintiffs' claims related to Home Depot requiring employees to remain on premises during rest breaks and Home Deport failing to include "Success Sharing" bonuses in the calculation of meal period and rest break premiums and in the calculation of the "regular rate of pay." (ECF No. 113 at 2.)

Defendants later brought another motion for partial summary judgment on May 2, 2017, which is the motion at issue in this case. (*See* ECF No. 146.) Defendants moved to dismiss Plaintiffs' claims for penalties under California Labor Code sections 203 and 226, arguing that Defendants had a "good faith dispute" regarding whether Plaintiffs were entitled to any of the alleged overtime pay due. (*See* ECF No. 146 at 1.) The Court granted the motion on September 7, 2017. (*See* ECF No. 158.)

Addressing the second partial summary judgment motion, the Court held that there was "a good faith dispute warranting summary judgment on the section 203 and 226 derivative claims." (ECF No. 158 at 5.) The Court found that "[t]he evidence . . . supports the conclusion that Home Depot, at minimum, has a good faith factual defense to the overtime wage claim[,]" and that "[i]n contrast, Plaintiffs have failed to show that this defense is unsupported, unreasonable, or presented in bad faith." (*Id.* at 5–6.) The Court found that, though "Home Depot has not submitted direct evidence of a *bona fide* business purpose for its initial workday designation, Home Depot has presented circumstantial evidence tending to show [that] the company did not design the workday for the purpose of evading overtime wages." (*Id.* at 6.) The Court first acknowledged Barnaby's declaration and testimony and noted that the history she proclaimed regarding Home Depot's consistent and unchanged definition of its workday since the 1980s was "relevant because it shows Home Depot defined the workday before it was subject to daily overtime laws in California and maintains the same workday in places that do not regulate overtime." (*Id.*) The Court also credited statements from Barnaby indicating that "Home Depot had not analyzed the impact of the workday definition on overtime savings or payments[, which] further indicate[d] a lack of purposeful design." The Court finally noted that "Home Depot's workday line[d] up with the default workday in the California [Department of Labor Standards Enforcement ("DLSE")] Manual (§ 48.1.3.1), which also suggest[ed] neutrality." (*Id.* at 6–7.) "These facts constitute[d] substantial evidence in support of Home Depot's defense that the company did not define the workday for the purpose of evading its daily overtime obligations." (*Id.* at 7.)

On July 21, 2023, Defendants filed a Request for Status Conference and Notice of Intent to Move to Strike Mistaken Testimony. (*See* ECF No. 207.) In that motion, Defendants notified the Court that Defendants had "recently learned that certain statements in the Declaration of Christine Barnaby . . . were mistaken, specifically, the statements that Home Depot's California workday has always been defined as the

calendar day and has never changed." (ECF No. 207 at 2.) Defendants claimed that "[t]he testimony and pleadings at issue were provided in good faith and, as stated in her Declaration, based on the information known to Ms. Barnaby at the time she provided the Declaration." (*Id.*) Newly discovered information has revealed, however, that the workday definition for California was defined as 4:00 a.m. to 3:59 a.m. for an approximately six-year period in the 1990s. (*Id.*) In a subsequent Joint Status Report, Defendants provided their position, asserting that:

> Determining events from 30 years prior is obviously challenging. . . . The period of time when the workday differed from the calendar day was over 25 years ago. Home Depot learned of the changed to the workday in the 1990s in the course of its further efforts to locate trial witnesses from the earliest years of the Company's history, and promptly disclosed this fact to the Court and Plaintiff's counsel.

(ECF No. 210 at 4.)

Plaintiffs brought the instant Motion on January 25, 2024. (*See* Not. of and Mot. for Reconsideration Regarding September 7, 2017 Order; Mem. of P. and A. (ECF No. 214) ("Motion" or "MFR").) Defendants filed an Opposition and Plaintiffs filed a Reply. (*See* Defs.' Opp'n to Pls.' MFR (ECF No. 215) ("Opposition" or "Opp'n"); Pls.' Reply in Supp. of MFR (ECF No. 216) ("Reply").) The Court heard oral arguments on March 28, 2024, where Attorney Melissa Grant appeared for Plaintiffs and Attorney Barbara Miller appeared for Defendants. (*See* ECF No. 223.) At the hearing, the Court gave the parties the chance to file supplemental briefing "limited to citations and parentheticals, providing supplemental authority addressing whether the failure to change a workday definition or the failure to add a new workday for a new shift is a basis for liability . . . ." (ECF No. 223.) Both parties filed their supplemental briefing on April 4, 2024. (*See* ECF Nos. 225–26.) The matter is now fully briefed.

////

////

////

**DISCUSSION**

**III. Plaintiffs Present A Sufficient Ground for Reconsideration**

Generally speaking, "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("*Santa Monica Baykeeper*") (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)) (emphasis omitted). District courts tend to apply the standards for Rule 59(e) or 60(b) to motions for reconsideration under Rule 54(b). *See, e.g.*, *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("*School District No. 1J*")). Thus, the Court "may properly reconsider its decision if it '(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *School District No. 1J*, 5 F.3d at 1263). And even though Rule 59(e) and Rule 60(b) have time periods for bringing such motions that have long passed, "a district court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent power rooted firmly in the common law and is not abridged by the Federal Rules of Civil Procedure." *Santa Monica Baykeeper*, 254 F.3d at 887; *see also Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) (recognizing prior decisions "affirming a district court's inherent authority . . . to modify or rescind its orders at any point prior to final judgment in a civil case.") (collecting sources).

Plaintiffs made their Motion on the basis of "new evidence [that] has become available." (MFR at 16.) The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the later filed documents into "newly discovered evidence." *School District No. 1J*, 5 F.3d at 1263 (collecting cases). Here, however, Plaintiffs could not have filed the documents at any prior point

in this case because Defendants admitted that even they did not know about this evidence until recently:

> In its attempt to locate the proverbial needle in a haystack – someone who worked at Home Depot more than 30 years ago and remembers something about establishing a workday for timekeeping purposes – Home Depot found old paper copies of policies from 25–30 years ago showing that the policy regarding the workday definition had changed twice in the 1990s ("the Policies"). Up to that point, Home Depot believed that the workday definition had never changed since Home Depot started operating in the 1980s. Home Depot relied on this belief in briefing its motion to summarily adjudicate Plaintiffs' claims for penalties pursuant to California Labor Code Sections 203 and 226. Upon discovering the Policies, Home Depot quickly produced them.

(Opp'n at 5.) Because this information was (1) not in Plaintiffs' control and (2) not even known to Defendants until recently, the Court finds that Plaintiffs provide "new evidence" sufficient to reconsider the Court's prior Partial Summary Judgment Order. *Compare with School District No. 1J*, 5 F.3d at 1263 (affirming denial of motion for reconsideration because the relevant evidence "and the process by which their relationship to the Preston affidavits could have been established, had been available to the School District from the beginning of the case.").

In urging the Court to deny reconsideration, Defendants argue that Plaintiffs have not set forth evidence of a "'strongly convincing nature' before the Court can reverse its prior decision." (Opp'n at 19–22.) Defendants are incorrect. As noted earlier, the Court held that there was a good faith dispute warranting summary judgment as to Plaintiffs claims under California Labor Code sections 203 and 226 because the evidence supported Defendants' position and Plaintiffs failed to show that Defendants' defense was unsupported, unreasonable, or presented in bad faith. (*See* ECF No. 158 at 5–6.) However, that holding was based entirely on indirect or circumstantial evidence that has since been undermined. (*See id.* at 6.) *Compare with Jakosalem v. Air Serv Corp.*, No. 13-CV-05944-SI, 2014 WL 7146672, at *6 (N.D. Cal. Dec. 15, 2014) ("Vague references to concerns regarding the administrability of

maintaining more than one workday and questionable inferences drawn from incomplete payroll data do not meet the high bar of demonstrating that there is 'no genuine issue of material fact.'"). Accordingly, the Court will reconsider the prior ruling in this case.

## IV. Upon Reconsideration, Plaintiffs Again Fail to Raise a Genuine Dispute of Material Fact

### A. Legal Standard for the Good Faith Dispute Defense

#### 1. The Good Faith Defense Under Section 203

California Labor Code § 203(a) provides that if an employer "willfully" fails to pay wages upon discharge, the employee's wages "shall continue as a penalty" from the discharge date for up to thirty days. *Hill v. Walmart Inc.*, 32 F.4th 811, 815 (9th Cir. 2022). "A willful failure to pay wages within the meaning of [§ 203] occurs when an employer intentionally fails to pay wages . . . when [they] are due." *Id.* (quoting Cal. Code Regs. tit. 8, § 13520). "However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under [§ 203]." *Id.* California's regulations explain that "[a] 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Id.* at 816 (quoting Cal. Code Regs. tit. 8, § 13520). "The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." Cal. Code Regs. tit. 8, § 13520.

As the Ninth Circuit has explained, "the operative question is simply whether, based on the state of the law when [the alleged violations occurred], [the defendant] has presented an objectively reasonable defense that is not marred by bad-faith conduct." *Hill*, 32 F.4th at 817. That is because "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'" *Id.* (quoting Cal. Code Regs. tit. 8, § 13520). Thus, the regulation imposes an objective standard, but subjective bad faith may be of evidentiary value in the objective bad faith analysis.

*See id.* "Unless there is evidence of subjective bad faith, it is 'besides the point' that [the defendant] may have only 'formulated' its [justifications] during litigation." *Id.* (quoting *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1204 (2008)).

### 2. The Good Faith Defense Under Section 226

Similar to section 203, section 226 provides that an employee is entitled to receive statutory damages if their employer fails to comply with the requirements of section 226(a), but only "as a result of a knowing and intentional failure by an employer to comply with subdivision (a)." Cal. Lab. Code § 226(e)(1). There is a split among district courts regarding whether "knowing and intentional" under section 226 equates to the "willfulness" requirement of section 203. *See Oman v. Delta Air Lines, Inc.*, 610 F. Supp. 3d 1257, 1273 (N.D. Cal. 2022) (citing *Arroyo v. Int'l Paper Co.*, 611 F. Supp. 3d 824, 839–41 (N.D. Cal. 2020), which noted the case law disagreement). The majority of district courts find the two are "akin" to each other. *Id.* "In contrast, for the minority view, 'knowing and intentional' simply requires that the defendant knew . . . facts existed that brought its actions or omissions within the provisions of section 226(a)." *Id.* at 1274 (quoting *Greenlight Sys., LLC v. Breckenfelder*, No. 19-cv-06658-EMC, 2021 WL 2651377, at *13 (N.D. Cal. June 28, 2021), *aff'd*, No. 21-16245, 2022 WL 17222415 (9th Cir. Nov. 25, 2022)). In other words, under the minority view, "an employer is liable so long as the wage statement was not the result of a clerical error or mistake." *Id.* (quoting *Wilson v. SkyWest Airlines, Inc.*, No. 19-CV-01491-VC, 2021 WL 2913656, at *2 (N.D. Cal. July 12, 2021)).

### B. Analysis

### 1. The Court Applies the Majority Approach

The parties did not address the issue of the difference in standards for a section 226 claim and a section 203 claim in the prior briefing for the Motion for Partial Summary Judgment. Indeed, Plaintiffs themselves equated the two standards for the good faith defense to each other. (*See* ECF No. 153 at 7, 13–14 (citing *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 2453202, at *4 (N.D. Cal. May 22,

2015)).  *Compare with Oman*, 610 F. Supp. 3d at 1274 (citing *Woods* as one of the cases adopting the majority rule).  Thus, the Court again applies the majority rule and equates the good faith defense under California Labor Code section 226 to the good faith defense under California Labor Code section 203.  *See Oman*, 610 F. Supp. 3d at 1274.

### 2. Plaintiffs Fail to Establish a Genuine Dispute of Material Fact

Previously, the Court found that Defendants met their burden by pointing to "Home Depot's declarant, Christina Barnaby," and specifically crediting her declaration and testimony.  (ECF No. 158 at 6.)  Relying on Barnaby's declaration and testimony, the Court found that Defendants established a "history of [a] company-wide practice [that] [wa]s relevant because it show[ed] [that] Home Depot defined the workday before it was subject to daily overtime laws in California and maintain[ed] the same workday in places that do not regulate daily overtime." (*Id.* at 6.)  As a result, the Court concluded that this was sufficient "circumstantial evidence tending to show the company did not design the workday for purpose of evading overtime wages" (*id.*), such that Home Depot had a good faith defense to liability, therefore making summary judgment as to the section 203 and 226 penalty claims appropriate (*id.* at 8.)

But Defendants now have evidence showing that Home Depot twice changed its definition of the workday in the 1990s.  (*See* Reply at 9 (citing Exhibits 51 and 52 to the Deposition Transcript of Christine Barnaby on 12/13/2023 contained in Second Decl. of Melissa Grant in Supp. of MFR ("Second Grant Decl.") Ex. 5 (ECF No. 216-1) at 29–36 ("12/13/2023 Barnaby Dep. Tr.").)  In particular, contrary to Defendants' position in briefing for the Motion for Partial Summary Judgment, the evidence now reveals that Defendants first established the workday definition as 12:00 a.m. to 11:59 p.m. of each calendar day in the 1980s but then, at least as of July 27, 1992, had a workday that was defined as 4:00 a.m. to 3:59 a.m.  (12/13/2023 Barnaby Dep. Tr. Ex. 51.)  The evidence also reveals now that this 4:00 a.m. to 3:59 a.m. workday definition was kept until around March 6, 1998 when "[t]he exception for California overtime pay ha[d]

been removed and there [wa]s a new exception for Alaska[,]" (12/13/2023 Barnaby Dep. Tr. Ex. 52, at 1, 3.) (*Compare with* ECF No. 146 at 4–5 ("This definition was established in the 1980s on a company-wide basis when Home Depot had little, if any, presence in California (Home Depot opened its first California store in 1985), and has not been changed since that time.").)

Additionally, contrary to the Court's prior finding, Home Depot established this 4:00 a.m.to 3:59 a.m. workday definition as a specific exception to California. (*See* 12/13/2023 Barnaby Dep. Tr. Ex. 51 ("The work day in California begins at 4:00 a.m. and ends at 3:59 a.m."); Second Grant Decl. Ex. 7, at 2 ("The work day in all states (except California) begins at 12:00 a.m. and ends the following evening at 11:59 p.m.").) (*Compare with* ECF No. 158 at 6 ("This history of company-wide practice is relevant because it shows Home Depot defined the workday before it was subject to daily overtime laws in California and maintains the same workday in places that do not regulate daily overtime.").)

Here, Plaintiffs argue that Home Depot only reverted back to this 12:00 a.m.to 11:59 p.m. calendar day workday definition in 1998 once California's Industrial Welfare Commission ("IWC") eliminated the daily overtime requirement.[1] (*See* MFR at 6, 18; Reply at 4–5, 12–13.) Home Depot even acknowledged the change in one Standard Operating Procedure or "SOP" Update Overview issued on March 6, 1998, stating that "[t]he exception for California overtime pay has been removed and there is a new exception in Alaska." (12/13/2023 Barnaby Dep. Tr. Ex. 52, at 3.) Plaintiffs' examination of Barnaby then revealed that this statement did not refer to "the workday definition of 4 a.m. to 3:59 a.m." but to "[t]he change in the law in California of the overtime rules." (Barnaby Dep. Tr. at 111:6–14.) That is, Barnaby subsequently

---

[1] *See* Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999, 1999 Cal. Legis. Serv. Ch. 134 § 2 (A.B. 60) ("In 1998 the Industrial Welfare Commission issued wage orders that deleted the requirement to pay premium wages after eight hours of work a day in five wage orders regulating eight million workers."), https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=199920000AB60 [Perma.cc Record: https://perma.cc/D7SE-VLBP].

11

revealed that Defendants changed their policy with an eye towards California's overtime laws in 1998 so that "[t]he work day in all states beg[an] at 12:00 a.m. and end[ed] the following evening at 11:59 p.m." (Decl. of Barbara J. Miller in Supp. of Defs.' Opp'n Ex. 15 (ECF No. 215-1), at 182 (providing a copy of Home Depot's 3/6/1998 Timekeeping and Payroll policy and Standard Operating Procedure document).)

This change, however, occurred prior to the events at issue in this case. Importantly, after California changed its laws once again to legislatively require that employers pay overtime for time worked in excess of 8 hours in a workday, *see* Assem. B. 60, 1999-2000 Leg. Sess., Stats. 1999, ch. 134 (A.B. 60), Home Depot did *not* change its definition of a workday. In assessing Home Depot's good faith defense, the question is whether the fact that it has maintained a 12:00 a.m. to 11:59 pm workday is sufficient circumstantial evidence to establish a good faith defense to grant summary judgment as to the Labor Code section 203 and 226 penalty claims, or whether its failure to change the definition in 2000 in response to A.B. 60 is sufficient circumstantial evidence to establish bad faith to deny summary judgment as to the Labor Code section 203 and 226 penalty claims.

Crucial here is understanding what is meant by the oft-quoted phrase that "[u]nder both federal and state labor laws, it is clear that an employer may not *designate* its workweek in a manner that is designed primarily to evade overtime compensation[,]" *Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361, 370 (2011) (emphasis added), or to "*establish* a day divide which has the purpose of reducing overtime pay of its employees[,]" *Jakosalem*, 2014 WL 7146672, at *4 (emphasis added). (*See also* ECF No. 153 at 6, 10–17 (citing these and other cases for the same or similar propositions); MFR at 9 (same); Reply at 14–15 (same).) What matters is *not* the justifications for the decision at the time that any alleged Labor Code violations later materialize, but, rather, the justifications for the decision at the time the decision was made. *See Hill*, 32 F.4th at 817. The text and relevant precedent confirm this.

Turning first to the text, California Labor Code section 510(a) provides that "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." As the district court in *Jakosalem* explained while discussing California Labor Code section 510(a):

> While the first sentence of Section 510(a) establishes the length of "a day's work" as eight hours, the second sentence establishes that overtime pay is due only where work in excess of eight hours (a day's work) is completed in a single workday. Reading these two sentences together suggests that the designation of the workday bears at least some relation to an employee's entitlement to overtime. Plaintiff's interpretation risks rendering the second sentence of Section 510(a) mere surplusage, and moreover reads in a shift-based overtime requirement for which there is no statutory support.

*Jakosalem*, 2014 WL 7146672, at *4 (citing *Petition of Pub. Nat'l Bank of New York*, 278 U.S. 101, 104 (1928)). The "logical inference is that the Legislature views only" hours worked in excess of eight hours during an established workday and intends the premium overtime pay guarantee to apply on a daily basis, not a rolling basis. *Compare with Mendoza v. Nordstrom, Inc.*, 2 Cal. 5th 1074, 1077, 1084–86 (2017) (determining that "premium pay is available not on a rolling basis, for any seventh consecutive day of work, but only for employees who must work every day of an employer's established regularly recurring workweek."). Thus, the text makes relevant the decision as to how to define a workday.

Courts, however, have recognized that intentionally manipulating the definition of a workday so as to avoid paying overtime can constitute a violation of the overtime laws. In the seminal decision of *Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361 (2011), a California Court of Appeal analyzed a claim under section 510 with respect to the work week. There, the court cited with approval materials from the DLSE Manual supporting the proposition that "employers may for bona fide business reasons establish an infinite variety of working schedules, including rotating and

13

alternating schedules under which employees start at different times on different days." *Id*. at 369. However, as the *Seymore* court noted, the DLSE Manual further states that:

> Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. *The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act.*

29 C.F.R. § 778.105 (emphasis added).

From the text of the DLSE Manual, the *Seymore* court concluded that: "Under both federal and state labor laws, it is clear that an employer may not designate its workweek in a manner that is designed primarily to evade overtime compensation." *Seymore*, 194 Cal. App. 4th at 370. *See also Huntington Mem'l Hosp. v. Superior Ct.*, 131 Cal. App. 4th 893, 910 ("The bottom line is this: An employer may not engage in a subterfuge or artifice designed to evade the overtime laws."). The same principle applies to the daily overtime laws. *See Jakosalem*, 2014 WL 7146672, at *4 (discussing *Seymore* and *Huntington* in the context of a daily overtime claim). In the context of this case, evidence that Home Depo defined its workday for the purpose of evading its daily overtime obligations would tend to negate a good faith defense and present a triable issue of fact on the California Labor Code section 206 and 203 penalty claims.

The complication here is that when Home Depot changed its definition of a workday in 1998, there was no overtime law on the books. In contrast, the fact that Home Depot changed its definition of a workday to 4:00 a.m. – 3:59 a.m. when the IWC established an overtime requirement and then back to 12:00 a.m. – 11:59 p.m. when that requirement was removed suggests that the change to a 4:00 a.m. start time could have been intended to evade overtime requirements; if Plaintiffs' claims arose from this period before the initial change to a 4:00 a.m. to 3:59 a.m. workday, they might have a claim. However, nothing about the reversion back to a 12:00 a.m. –

14

11:59 p.m. workday – which is the relevant decision for the claims Plaintiffs do bring – suggests that it was anything but a bona fide business decision. At oral argument, the Court asked counsel for Plaintiffs if they had any evidence that the 1998 reversion was not a bona fide business decision, and counsel responded that Plaintiff did not. Indeed, at least with respect to the daily overtime requirements, it could not be the case that the reversion was made to evade daily overtime requirements, *see* 29 C.F.R. § 778.105, since there *were no daily overtime requirements* when the change was made.

Plaintiff's primary argument, however, is that the failure to change the definition of the workday in response to AB 60 is sufficient evidence of bad faith such that summary judgment should be denied. Plaintiff points to no authority, however, that suggests that a failure to affirmatively change a workday definition is evidence of bad faith. As discussed above, the cases suggesting that a change in the definition of the workday could violate California Labor Code section 510 (and also indicate bad faith) arise from a provision in the DLSE Manual providing that the "beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act." 29 C.F.R. § 778.105. The DLSE Manual does not speak to a *failure* to change the workweek (or by analogy the workday) definition.

Because the relevant timeframe for the good-faith defense is the state of the law at the time the challenged act in question was made, then, Plaintiffs' argument ultimately depends on whether the reversion back to the 12:00 a.m. to 11:59 p.m. workday definition is sufficient, on its own, to establish an inference of bad-faith. But here, Plaintiffs conceded that there was no evidence of bad faith because there was no daily overtime requirement. Indeed, when asked directly at oral argument whether the change could have been made to avoid other requirements of the California Labor Code, Plaintiffs had no argument. Thus, nothing in the record suggests that

15

Home Depot acted in bad faith when it made the change in 1998. *See Hill*, 32 F.4th at 817–18.

Without any evidence of bad faith, then, to avoid summary judgment on the penalty claims under California Labor Code sections 203 and 226, Plaintiffs must present evidence from which "a reasonable jury could find that [Home Depot's business justification] was unreasonable or unsupported by evidence." *Hill*, 32 F.4th at 818. But Plaintiffs have provided no evidence or argument to suggest that a good faith reason did *not* exist for making the change back to a 12:00 a.m. to 11:59 p.m. workday definition. Accordingly, the Court must reaffirm the grant of summary judgment on Plaintiffs' claims under Labor Code sections 203 and 226.

## CONCLUSION

At bottom, while the discovery that Home Depot changed its workday definition is a newly discovered fact that warrants reconsideration, that fact ultimately does not prove relevant to the Court's prior decision granting summary judgment. This observation by Judge Mendez remains true, at least with respect to the current law requiring payment of overtime:

> This history of company-wide practice is relevant because it shows Home Depot defined the workday before it was subject to daily overtime laws in California and maintains the same workday in places that do not regulate daily overtime. . . . Additionally, Home Depot's workday lines up with the default workday in the California DLSE Manual (§ 48.1.3.1), which also suggests neutrality. These facts constitute substantial evidence in support of Home Depot's defense that the company did not define the workday for the purpose of evading its daily overtime obligations.

(ECF No. 158 at 6–7.) And, by contrast, Plaintiffs have still "not shown that Home Depot's defense is unsupported, unreasonable, or presented in bad faith." (*Id*. at 7.)

////

////

////

1    For the reasons set forth above, the Court GRANTS Plaintiffs' Motion for
Reconsideration (ECF No. 214).  Upon reconsideration of Defendants' Partial Summary
Judgment Motion, however, the Court again GRANTS Defendants' Motion.

IT IS SO ORDERED.

Dated:    **June 10, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – Bell.12cv2499.MFR